[No. 34462.   Department Two.   May 9, 1958.]

CAPITOL HILL METHODIST CHURCH OF SEATTLE *et al.*, *Appellants*, v. THE CITY OF SEATTLE *et al.*, *Respondents.*[1]

[1]Reported in 324 P. (2d) 1113.

*Allen, DeGarmo & Leedy,* for appellants.

*A. C. Van Soelen, Arthur T. Lane,* and *Houghton, Cluck, Coughlin & Henry,* for respondents.

HUNTER, J.—This is an action to enjoin the closing, obstruction, or vacation of east John street, between Fifteenth and Sixteenth avenues north, in the city of Seattle. To avoid the necessity of complicated written descriptions of the streets and lots involved in this controversy, and in an attempt to simplify our discussion of the underlying

legal principles, the area in question, with the parties' properties identified, has been reproduced in the following map:

The defendant Group Health Cooperative of Puget Sound, Inc., is a corporation organized and existing under the laws of the state of Washington. It owns all the property abutting east John street from Fifteenth to Sixteenth avenue north, on a part of which it operates a hospital. In November, 1956, it filed a petition with the city council of Seattle to vacate the portion of east John street extending from the alleyway between Fifteenth and Sixteenth avenues to Sixteenth avenue north.

The plaintiffs, Capitol Hill Methodist Church of Seattle, a corporation, Matthew J. Cline, Adeline M. Spear, and Max Grieff, are the owners of property in the immediate vicinity (see map), and they protested the granting of the petition before the streets and sewers committee of the city council. After a hearing on this matter, the city council adopted an ordinance granting the petition, which was approved by the mayor. The vacation was to take effect June 7, 1957.

Thereafter, the plaintiffs commenced this action against the city of Seattle and the Group Health Cooperative for an injunction to prevent the closing of the public street.

The defendants filed a motion for a summary judgment in their favor and affidavits in support thereof. The plaintiffs filed counter-affidavits, but the court, after a hearing, determined that there were no genuine material issues of fact to be tried, and that the defendants were entitled to judgment as a matter of law. From the order granting the motion, the plaintiffs have appealed.

The appellants have assigned as error the granting of the motion for summary judgment by the trial court.

The respondents' motion was based on Rule of Pleading, Practice, and Procedure 19, 34A Wn. (2d) 81, as amended, effective November 1, 1955, which provides in part as follows:

"1. *Summary Judgment*:
" . . .
"(b) For Defendant Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
"(c) Motion and Proceedings Thereon. The motion shall be served at least ten days before the time fixed for the hearing. The adverse party, prior to the day of hearing, may serve opposing affidavits. *The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*" (Italics ours.)

This is the first opportunity we have had to interpret our rule providing for a summary judgment. In view of the fact that the rule was adopted almost verbatim from Federal Rule of Civil Procedure 56, 28 U. S. C. A., we deem it advisable to review some of the Federal court decisions where the purpose of the rule has been discussed.

In *Sartor v. Arkansas Natural Gas Corp.*, 321 U. S. 620, 88 L. Ed. 967, 64 S. Ct. 724 (1944), the supreme court stated:

"Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." (Cited in *Steven v. Howard D. Johnson Co.*, 181 F. (2d) 390 (1950); *Chappell v. Goltsman*, 186 F. (2d) 215 (1950).)

In *Broderick v. Gore*, 224 F. (2d) 892 (1955), the court said:

"The purpose of Rule of Civil Procedure 56(c), 28 U. S. C. A., authorizing entry of summary judgment in specified circumstances is to permit the *expeditious disposition of cases in which there are no genuine issues of material fact upon which the outcome of the litigation depends*. But the procedure is not to be used as a substitute for a regular trial of cases in which there are disputed issues of material fact upon which the ultimate outcome hinges, and it should be invoked with due caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts. Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation depends, *the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment.* SMS Manufacturing Co. v. U. S.-Mengel Plywoods, 10 Cir., 219 F. 2d 606. And in determining whether a motion for summary judgment is well founded, the court may *pierce formal allegations* of fact in the pleadings and determine from the entire case whether there are genuine issues of fact for resolution upon a formal trial. *Avrick v. Rockmont Envelope Co.*, 10 Cir., 155 F. 2d 568." (Italics ours.)

See, also, *Silva v. Sandia Corp.*, 246 F. (2d) 758 (1957); *Cox v. English-American Underwriters*, 245 F. (2d) 330 (1957); *New and Used Auto Sales, Inc. v. Hansen*, 245 F. (2d) 951 (1957); *Sequoia Union High School Dist. v. United States*, 245 F. (2d) 227 (1957); Federal Rule of Civil Procedure 56, 28 U. S. C. A., 6 Moore's Federal Practice (2d ed.) 2028, § 56.04 (1).

■ From a review of these authorities, it is clear that the sole question presented for our determination is: whether the pleadings and affidavits considered by the trial court raise any *genuine issues of material fact* upon which the outcome of the litigation depends. If such issues are found to exist, the appellants are entitled to a trial and must prevail on this appeal. However, if there exist no genuine issues of material fact and the respondents are entitled to judgment as a matter of law, the disposition made by the trial court must be upheld.

The appellants vigorously contend that the record reveals "genuine issues of material fact" entitling them to a trial on the merits. In substance, the *alleged* genuine issues of material fact raised in the pleadings and affidavits are as follows:

(1) The appellants acquired their properties in reliance upon the recorded plat description in which east John street appeared as a dedicated public street and provided access from Fifteenth to Sixteenth avenue north.

(2) East John street is the appellants' *principal* means of access, and the closing thereof will deprive them of the *most direct* and *convenient access* to their respective properties.

(3) The closing of the street will expose the appellants' properties to an extreme fire hazard.

(4) Closure of said street would halt all access from the west of persons seeking to attend the services of public worship conducted by the appellant church, and would substantially reduce the number of persons attending church.

(5) The property of each appellant would be permanently damaged by the closing, and each would be specially damaged in a substantial degree.

(6) The ordinance authorizes the vacation of a portion of a public street for a private use.

At the outset, before considering the alleged issues of fact above, we must determine whether the appellants are in a position to question the vacation of the street by city council of Seattle.

We said in *Olsen v. Jacobs,* 193 Wash. 506, 76 P. (2d) 607 (1938):

"The general rule supported by this court is that only abutting property owners, *or* those whose reasonable means of access has been obstructed, can question the vacation by the proper authorities. To warrant such interference with proceedings relative to street or road vacations, *it must appear that the complaining parties suffered a special damage different in kind and not merely in degree from that sustained by the general public.*" (Italics ours.)

In *Taft v. Washington Mut. Sav. Bank,* 127 Wash. 503, 221 Pac. 604 (1923), this court stated:

"We conclude that the correct rule is that only those directly abutting on the portion of the street or alley vacated, or alleged to be obstructed, or those whose rights of access are substantially affected, have such a special interest as to enable them to maintain an action. The further rule, deducible from our own cases and the authorities generally, is that owners of property abutting on a street or alley have *no vested right* in such street or alley *except to the extent that their access may not be unreasonably restricted or substantially affected. Owners who do not abut,* such as respondents here, *and whose access is not destroyed or substantially affected, have no vested rights which are substantially affected.*" (Italics ours.)

We find, in 11 McQuillin on Municipal Corporations (3d ed.) 146, § 30.194, the following statement:

"On the other hand, if the street directly in front of one's property is not vacated but the portion vacated is in another block, so that he may use an intersecting cross street, although perhaps it is not quite so short a way nor as convenient, it is almost universally held that he does not suffer such a special injury as entitles him to damages. And this is so notwithstanding the new route is less convenient or the diversion of travel depreciates the value of his property. The fact that the lot owner may be inconvenienced or that

he may have to go a more roundabout way to reach certain points, it is generally held, does not bring him an injury different in kind from the general public, but in degree only. 'If means of ingress and egress are not cut off or lessened in the block *of the abutting owner,* but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria.'" (Italics ours.)

It must be borne in mind that the appellants in this case are not abutting owners of property on the portion of the street vacated by the city of Seattle. To maintain this action, their right of access must be "destroyed or substantially affected," or, to put it another way, their reasonable means of access must be obstructed, and they must suffer a special damage, *different,* in *kind and not merely degree,* from that sustained by the general public. This, they have failed to show by their pleadings and affidavits.

They contend that east John street is their principal means of access and the closing thereof will deprive them of the most *direct* and *convenient* access to their respective properties. This allegation is insufficient under the above authorities to allow the appellants to maintain this action. The only practical effect the vacation has on the appellants' properties is the deflection of traffic one block to Denny Way and east Thomas street. This is too slight a consideration to be controlling in this case. See *Mottman v. Olympia,* 45 Wash. 361, 88 Pac. 579 (1907).

In their brief, appellants argue that:

"There is ample allegation of substantial impairment of access to appellants' properties—if nothing else were alleged, the complaint states, and the affidavit of Chief Fitzgerald asserts, that closure of East John Street will so impair access as to expose appellants' properties to an extreme fire hazard."

The appellants concede, however, that the asserted fire hazard, like all other matters complained of, was called to the attention of the city authorities prior to the passage of the vacation ordinance. The furnishing of fire protection by the city of Seattle is a governmental function

(see *Benefiel v. Eagle Brass Foundry*, 154 Wash. 330, 282 Pac. 213 (1929); RCW 35.22.280(23)), and this court will not inquire or interfere therewith in the absence of arbitrary or capricious conduct on its part. Here, the appellants have not alleged that the city council acted arbitrarily or capriciously in adopting an ordinance which would create a fire hazard endangering their property. Their argument is solely that this factor reveals there has been a substantial impairment of their access. This is insufficient to warrant the court's interference with a legislative function. We cannot and will not attempt to judge the wisdom of the council's action, since, in a case of this nature, we cannot substitute our judgment for that of the municipal authorities on the degree of fire protection to be afforded the appellants' properties.

It is alleged in the appellants' complaint that:

"The closure of said street would halt all access by East John Street from the west of persons seeking to attend the services of public worship conducted by plaintiff Capitol Hill Methodist Church of Seattle and would reduce substantially the number of persons attending said church. . . . ."

The complaint was signed by Matthew J. Cline, one of the apartment house owners, and, in his affidavit, he states that he has knowledge of facts alleged and that they are true. The record does not reveal what, if any, connection Mr. Cline has with the church, but it does disclose that the street will only be closed to vehicular travel, in view of the fact that some type of pedestrian walkway will be provided. Further, the church is located on the corner of east John street and Sixteenth streets and retains excellent access to the system of streets remaining. Although there is considerable doubt in our minds that the closure of east John street will result in an appreciable loss of congregation because of the slight inconvenience to vehicular traffic, even assuming this to be true, it would not afford a basis, under the facts of this case, for enjoining the vacation of the street, since *excellent access remains*.

The appellants contend further that the vacation of the street is for a private use and should be enjoined on this ground. They argue that vacation of a public street *solely* for a private purpose is illegal in this jurisdiction, and cite *Young v. Nichols,* 152 Wash. 306, 278 Pac. 159 (1929) and *Fry v. O'Leary,* 141 Wash. 465, 252 Pac. 111, 49 A. L. R. 1249 (1927), in support thereof. We agree with this statement of the law, but it is of no assistance to the appellants in this case. The rule is clearly stated in the *Fry* case, *supra,* as follows:

"There can be no question but what, under our decisions, the power of vacation of streets and alleys or portions thereof belongs to the municipal authorities, and the exercise of that power is a political function which, *in the absence of collusion, fraud, or the interference with a vested right, will not be reviewed by the court*; and that one who suffers damages similar to those sustained by the public generally will not be heard to complain. *Ponischil v. Hoquiam Sash etc. Co.,* 41 Wash. 303, 83 Pac. 316; *Freeman v. Centralia,* 67 Wash. 142, 120 Pac. 886; *Taft v. Washington Mutual Savings Bank,* 127 Wash. 503, 221 Pac. 604." (Italics ours.)

See, also, *Mottman v. Olympia, supra.*

The appellants do not claim that the vacation of east John street was the result of collusion or fraud, and we have previously concluded that their access has not been destroyed, or substantially affected, which would constitute an "interference with a vested right" under our holding in the *Taft* case, *supra.* Therefore, the appellants, whose properties do not abut on the portion of the street vacated, have no standing to question the purpose for which the city council granted the vacation.

The final contention of the appellants, which we will discuss, is whether they have a special property right in the street in question, or, to state it another way—whether they have a private easement over the street which survives the statutory vacation. Appellants argue that they acquired their properties in reliance upon the recorded plat description in which east John street appeared as a dedicated public street, and on which they relied as the

principal means of access to their properties; that the respondent Group Health Cooperative purchased in reference to the plat, and the natural inference of deraignment of title from the platter arises, thereby estopping the respondent from denying the easement. The appellants did not allege in their complaint or affidavits that they and the respondent Group Health Cooperative are grantees from a common grantor, and resort must be made to inference, which may or may not arise under the facts alleged. However, we will assume that the inference urged by the appellants arises, in view of the nature of the summary judgment proceeding. The appellants cite authorities from other jurisdictions to support their contention of private easement, and the cases of *Van Buren v. Trumbull,* 92 Wash. 691, 159 Pac. 891 (1916); *Howell v King County,* 16 Wn. (2d) 557, 134 P. (2d) 80, 150 A. L. R. 640 (1943); *Burkhard v. Bowen,* 32 Wn. (2d) 613, 203 P. (2d) 361 (1949); *Brown v. Olmsted,* 49 Wn. (2d) 210, 299 P. (2d) 564 (1956).

These cases simply hold that parties who purchase property from a common grantor, in reference to a recorded plat, acquire a private easement for the purpose of access over the streets and alleys abutting their property, and/or over the streets and alleys that are reasonably necessary for ingress and egress to their property. In this case, such a rule cannot be applied, for the reason that (1) the appellants are not abutting owners, and (2) as previously stated, the vacated street is not necessary for reasonable access to their property.

We are convinced, after a careful study of the record presented, that the trial court properly granted the respondents' motion for a summary judgment, there being no genuine issues of *material* fact upon which the outcome of the litigation depended.

The judgment is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

---

July 2, 1958. Petition for rehearing denied.