[No. 37564.    Department Two.    June 3, 1965.]

YARROW FIRST ASSOCIATES, *Appellant,* v. THE TOWN OF CLYDE HILL, *Respondent.**

*Reported in 403 P.2d 49.

*Rauscher, Rooks, O'Connor & Moser*, for appellant.

*Karr, Tuttle, Campbell, Koch & Granberg* and *F. Lee Campbell*, for respondent.

STAFFORD, J.†—Yarrow First Associates (hereinafter referred to as Yarrow) sought to enjoin the town of Clyde Hill (hereinafter called Clyde Hill) from vacating an existing street which affords the sole access to their real property. Yarrow has appealed from an adverse judgment in favor of Clyde Hill.

The town of Houghton (hereinafter called Houghton) lies to the north of Clyde Hill. A small tip projects southward into the Clyde Hill area. The center line of Points Drive is a common boundary. Proposed primary state highway No. 1 (hereinafter called the highway) was to traverse the area on an east-west course. The limited access facility was designed to sever the small southern tip of Houghton leaving it no direct access to the rest of the town. The southern curve of Points Drive was to be dead-ended at both ends, leaving it only one-half mile in length.

On March 9, 1961, Clyde Hill approved the Highway Department's access plan which included an access route for the portion of Houghton to be severed. Access was to be obtained by traveling south from Points Drive along 96th Avenue N. E. Ninety-sixth Avenue N. E. lies wholly within Clyde Hill. (See illustration.)

---

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

☒ Yarrow Property

After completion of the highway, Yarrow purchased substantially all of the severed area from the state. On August 16, 1963, Houghton issued Yarrow a permit to build a 20-story apartment on the severed area. It is to be approximately 200 feet in height and will accommodate 89 family units.

Immediately to the south of Houghton's severed area, Clyde Hill is zoned R-1 for single family residences. Building heights are limited to 27 feet. Thus, the apartment authorized by Houghton under a 1960 zoning ordinance is incompatible with the adjoining Clyde Hill area.

On September 12, 1963, the Clyde Hill council adopted a resolution designed to prevent the use of 96th Avenue N. E. by residents of Houghton who lived on the Yarrow tract. The south half of Points Drive and a small portion of the north end of 96th Avenue N. E. were to be vacated.

Yarrow obtained a temporary restraining order. However, the next day, Clyde Hill's council adopted another resolution which was similar in effect.

Ninety-sixth Avenue N. E. is the sole existing access to the southern tip of Houghton. Plans for the development of future access routes connecting with Points Drive do not rise to the dignity of an *existing way*. Clyde Hill's action, if permitted, will completely landlock the southern tip of Houghton (the Yarrow property).

There is no substantial evidence to support the trial court's finding that the traffic along 96th Avenue N. E. caused by the apartment "would endanger the lives and persons of the residents of the Town of Clyde Hill residing within said area." The testimony in support of the finding is largely an expression of fear that it will be a busy street. However, this is a far cry from proof that such traffic will, in fact, endanger the lives and persons of Clyde Hill residents.

■ Clyde Hill challenges Yarrow's right to contest the vacation of 96th Avenue N. E. It is asserted that they have suffered no special damage. *Capitol Hill Methodist Church v. Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958). However, the Clyde Hill plan to deliberately landlock the Yarrow property creates a special damage that will support this challenge to the attempted vacation.

The trial court also entered a conclusion of law that Clyde Hill had a right to vacate 96th Avenue N. E. Under the circumstances of this case, the conclusion is in error.

Assuming, but not deciding whether, the Clyde Hill town council used the proper mechanics in adopting the two resolutions, the fundamental question is whether such an ordinance may be adopted under the guise of police power.

■ It is not questioned that Clyde Hill has the power to vacate streets. RCW 35.79.010 - RCW 35.79.050. It may convert a street to another public purpose more suited to the public good; it may vacate a street when it is no longer required for public use or when it has little public benefit; or it may vacate a street when it is desired to substitute a new and different way more useful to the public. But, in

any event, the vacation of a street must be based upon some element of "public use." *Young v. Nichols*, 152 Wash. 306, 278 Pac. 159 (1929).

It is only by indulging in the presumption that the Clyde Hill city council decided that the public needs required vacation of the street that we can say the action of the council was for a "public use." The record before this court does not permit such a presumption.

It is true that councilman Lutz testified that such vacation "would be for the public good." However, his conclusion was based upon an affidavit of the city attorney. The affidavit averred that the vacation was for a public purpose because the nonresidents to the north would use 96th Avenue N. E. without paying taxes or contributing to construction or maintenance of Clyde Hill streets. This, and other testimony, make it clear that the street was to be vacated because occupants of the apartment would increase traffic flow without making a corresponding contribution in taxes and because Houghton had authorized a structure that was incompatible with Clyde Hill zoning laws.

There is nothing to indicate that serious consideration was given to widening 96th Avenue N. E. to its dedicated width. The record is silent as to what consideration was given to the use of adequate traffic control devices that would permit safe use of 96th Avenue N. E.

In closing a public street, the "public use" that must be considered is broader and more inclusive than the mere use by abutting property owners. Streets are dedicated to the public use. *State ex rel. York v. Board of County Comm'rs of Walla Walla Cy.*, 28 Wn.2d 891, 184 P.2d 577, 172 A.L.R. 1001 (1947). They pertain to the exercise of a governmental function. *People v. Grant*, 306 N. Y. 258, 117 N.E.2d 542 (1954); *Hofstra College v. Board of Trustees of Incorporated Village of Hempstead*, 145 N.Y.S. 2d 323 (1955). Municipal corporations hold an interest in the streets for the benefit of the public. *Peoples Gas Light & Coke Co. v. Chicago*, 413 Ill. 457, 109 N.E.2d 777 (1952); *People v.*

*Grant, supra.* This implies that streets must be maintained primarily as public ways. *State ex rel. York v. Board of County Comm'rs, supra; Peoples Gas Light & Coke Co. v. Chicago, supra; Hofstra College v. Board of Trustees of Incorporated Village of Hempstead, supra.* This refers not alone to adjacent property owners, nor to the inhabitants of a particular political subdivision, but to the whole people. *People v. Grant, supra; Peoples Gas Light & Coke Co. v. Chicago, supra; Hofstra College v. Board of Trustees of Incorporated Village of Hempstead, supra.* Every citizen of the state has an equal right to use the streets. *Peoples Gas Light & Coke Co. v. Chicago, supra;* 25 Am. Jur. *Highways* § 163.

Cities are vested only with such powers over the streets as are conferred upon them by the legislature. *State ex rel. York v. Board of County Comm'rs, supra; People v. Grant, supra.* However, the power to regulate streets is not the power to prohibit their use by nonresidents. *People v. Grant,*[1] *supra; Wiggin v. Town of Somers,* 4 N.Y.2d 215, 173 N.Y.S.2d 579, 149 N.E.2d 869 (1958);[2] *Hofstra College v. Board of Trustees of Incorporated Village of Hempstead,*[3] *supra;* 7 McQuillin, Municipal Corporations § 24.618 (3d ed.). Similar consideration must be given to the power of a municipality to vacate a street.

Clyde Hill attempted to vacate 96th Avenue N. E. in such a way as to prohibit its use by nonresidents living north of Points Drive, while leaving the balance of the street open for use by the local residents. However, the residents of a particular town possess no proprietary rights to the use of its streets, in priority to or exclusion of the general public. They may not use their power to the detriment of other citizens or municipalities of the state. *People v. Grant,*

---

[1]Nonresident factory employees were prohibited from using the streets in a limited area while going to and from work at the factory.

[2]Nonresidents were prohibited from hauling garbage over the city streets to a garbage dump.

[3]College personnel were prohibited from using a portion of the city streets while going to and from the college.

*supra*; 25 Am. Jur. *Highways* § 163. The fact that a city may have the burden of constructing or maintaining its streets gives it no peculiar privileges insofar as the use of its streets is concerned. 25 Am. Jur. *Highways* § 163,

This case presents a prime example of the difficulties engendered by one municipality attempting to deny its neighbors the use of its streets. In recent years, numerous towns have developed around Lake Washington. They have clustered together with interlocking city lines. No doubt there are numerous conflicting ordinances and community interests. However, if each town was permitted to close the streets to its neighbors because they increased traffic flow without paying taxes, or because they desired to punish the adjoining town for having a conflicting zoning ordinance, chaos would result. Each town could be land-locked by its neighbors. No traffic would move. Commerce would die. The legal barriers, though written on paper, would be as effective as if constructed of concrete blocks. To state the proposition is to refute it.

The power to vacate streets and the power to regulate traffic were not intended for the use to which they have been put in this case. The Clyde Hill city council abused its discretion. *Ponischil v. Hoquiam Sash & Door Co.*, 41 Wash. 303, 83 Pac. 316 (1906).

The judgment is reversed, and the case remanded with instructions to enjoin Clyde Hill from vacating 96th Avenue N. E. except for a public purpose consistent with this opinion.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.