[No. 39447.    Department Two.    August 29, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM J. WINEBERG, *Individually and as Executor, et al., Appellants.**

*Reported in 444 P.2d 787.

*Moore, Walstead, Hallowell & Mertsching, Alan Hallow-
ell,* and *Charles T. Mertsching,* for appellant Wineberg.

*The Attorney General* and *Theodore O. Torve, Assistant,*
for respondent.

NEILL, J.—In this eminent domain proceeding by the
State Highway Department, an order adjudicating public
use and necessity was entered and the matter of damages
for the taking came on for trial before a jury. Appellant
Wineberg appeals from the verdict, judgment and decree of
appropriation awarding him $23,000 for the taking of a part
of his property and damages to the remainder of his prop-
erty.

Appellant owned lots 1 through 12 of block 110, lots 1
through 6 of block 120, and the abutting vacated portion of
Linden Street lying between blocks 110 and 120, all in
Parker's Addition to Kalama. Primary State Highway No. 1
(PSH 1) runs parallel to the front of appellant's property.
The highway was originally a 2-lane roadway and later
widened to a 4-lane facility at grade with appellant's prop-
erty. The highway was designated as a limited access high-
way in 1947. The original highway acquisition left an alley
20 feet in width between the state's right-of-way and ap-
pellant's property line as it paralleled the highway. From
the time the highway was first constructed, the alley has
been paved and improved and has since been used by ap-
pellant and his customers in parking and in passing be-
tween the highway and appellant's business property. The
alley was separated from the highway by a concrete curb
lying on the west boundary of the alley.

To assist in understanding the issues raised we have set
forth in the appendix two drawings. Figure 1 shows the
property before condemnation. Figure 2 shows the property

as it will exist after condemnation and construction of the new lanes and frontage road.

The trial court ruled that appellant's property was an entire, contiguous tract and that the proposed acquisition was a partial taking; that lots 1 through 12 of block 110 abutted on the alley and did not have direct access to PSH 1; and that the vacation of Linden Street carried out to the east boundary of the west half of blocks 110 and 120 (the east boundary of the highway), thus eliminating the alley in front of Linden Street and giving appellant access to PSH 1 from this portion of appellant's property.

The state had previously purchased a portion of lots 1 through 6 of the east half of block 120, eliminating the alley in front of this portion of appellant's property, thus giving access to the highway as to lots 1 through 6, block 120. There was an "on-off" approach to PSH 1 in front of a service station on lot 12 and the vacated portion of Linden Street.

The condemnation proceedings involved the taking of lot 12 of block 110, lots 1 through 6 of block 120 and the vacated portion of Linden Street. Thus, appellant is left with lots 1 through 11 of block 110.

Following condemnation, Kingwood Street on which appellant's property abuts, instead of entering PSH 1 at grade at the point of intersection, will be closed at the highway. This closing still permits entry from Kingwood Street to a proposed 2-way frontage road in place of and substantially at the same location as the alley. Unlike the alley, however, the frontage road will continue from Kingwood Street past Linden Street, parallel to PSH 1, to an interchange, thus providing access from appellant's remaining property to PSH 1 at a point about 1,500 feet north of his remaining property. Appellant does not abut on any portion of Kingwood Street that will be closed, the closure occurring at the westerly side of intersection of Kingwood and the alley. Kingwood Street will maintain its access to all Kalama city streets as it did prior to the condemnation.

Appellant's first assignment of error is that the trial court erred in ruling that the closure of Kingwood Street at

its intersection with PSH 1 was not a compensable item of damage. The jury was instructed:

> You shall allow no compensation to respondents [appellant here] because the owners or others must take a more circuitous route in going to or leaving from their remaining property as a result of the closure of Kingwood street.
>
> However, you may allow such compensation to respondents as you find is established by the evidence because the owners or others must take a more circuitous route in going to or leaving their remaining property as a result of the loss of direct access for northbound traffic only. Instruction No. 10.

Relying upon *Van Buren v. Trumbull*, 92 Wash. 691, 159 Pac. 891 (1916), appellant contends that a private easement in a roadway exists in a grantee who purchases his lots with reference to a plat, even though the rights of the general public may be extinguished, and that the legislature cannot legislate so as to take away such right of easement without payment of just compensation.

■ A review of prior decisions by this court establishes: (1) a property owner must abut directly upon the portion of the roadway being vacated in order to be awarded compensable damages per se; (2) where the closure and the owner's property are separated by an intersecting street, compensation is usually denied; and (3) where the closure occurs within the same block but not directly in front of the property, the owner must show physical impairment of his access different in kind from that of the general public (*i.e.*, if the impairment is merely an added inconvenience that is common to all travelers it cannot form the basis for payment of compensation). *See, Capitol Hill Methodist Church of Seattle v. Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958); *Kemp v. Seattle*, 149 Wash. 197, 270 Pac. 431 (1928); *Freeman v. Centralia*, 67 Wash. 142, 120 Pac. 886 (1912); *In re Fifth Ave. & Fifth Ave. South, Seattle*, 62 Wash. 218, 113 Pac. 762 (1911); *Sweeney v. Seattle*, 57 Wash. 678, 107 Pac. 843 (1910); *Smith v. Centralia*, 55 Wash. 573, 104 Pac. 797 (1909);

*Mottman v. Olympia,* 45 Wash. 361, 88 Pac. 579 (1907); *Ponischil v. Hoquiam Sash & Door Co.,* 41 Wash. 303, 83 Pac. 316 (1906). Also RCW 47.52.041 provides:

> No person, firm or corporation, private or municipal, shall have any claim against the state, city or county by reason of the closing of such streets, roads or highways as long as access still exists or is provided to such property abutting upon the closed streets, roads or highways. Circuity of travel shall not be a compensable item of damage.

Appellant's property does not abut directly on the portion of the roadway being closed. He has not shown that reasonable means of access have been obstructed nor that he has suffered special damage different in kind, and not merely degree, from that sustained by the general public. The vacated portion of Kingwood Street is not necessary for reasonable access to his property inasmuch as the streets physically surrounding his property have not been closed. *Capitol Hill Methodist Church of Seattle v. Seattle, supra.* In *Van Buren v. Trumbull, supra,* we held that a street vacation which eliminated the public easement did not deprive an abutting owner of his right of private easement in a case where, as here, the abutting owner acquires his land as part of and in reliance on a plat containing the street. If appellant were an abutting owner his argument might be convincing. But as we have indicated, appellant's property does not abut upon the closed street and the same rules should apply to deprivation of the private easement as apply to the public easement. Accordingly, we hold appellant's first assignment of error is not well taken.

Appellant next assigns error to the trial court's ruling that as a matter of law appellant did not have direct access to PSH 1 from the southerly 25 feet of the property taken (lot 12) and from property not taken. It is not disputed that appellant is an abutting owner to PSH 1 with respect to block 120 and of vacated Linden Street and compensation was awarded for loss of direct access as to such property. For some years appellant apparently had indirect access from PSH 1 to his remaining property by use of the

alley to the "on-off" ramp in front of the service station. Appellant seeks to come within RCW 47.52.080 which provides:

No existing public highway, road or street shall be constructed as a limited access facility except upon the waiver, purchase, or condemnation of the abutting owner's right of access thereto as herein provided. In cases involving existing highways, if the abutting property is used for business at the time the notice is given as provided in RCW 47.52.072, the owner of such property shall be entitled to compensation for the loss of adequate ingress to or egress from such property as business property in its existing condition at the time of the notice provided in RCW 47.52.072 as for the taking or damaging of property for public use.

He cites *Motoramp Garage Co. v. Tacoma,* 136 Wash. 589, 241 Pac. 16, 42 A.L.R. 886 (1925) and earlier decisions for the familiar proposition that the fee title to streets, alleys and ways dedicated to the public remain in the adjoining landowners, subject to the right of the public to use them for travel and other limited uses. Appellant then contends that, because he owns fee title to the east half of the alley in block 110 and the state owns fee title to the west half of the alley in block 110, he and the state are "abutting" property owners within the meaning of the statute. Appellant therefore argues that he was entitled to have the jury determine his damages with regard to the deprivation of his rights of direct access between the remaining property and the existing highway. We do not agree.

In *Deaconess Hosp. v. State Highway Comm'n,* 66 Wn.2d 378, 403 P.2d 54 (1965), the hospital sought to enjoin the construction of a limited access freeway in Spokane along Fourth Avenue, on which the hospital abutted, or anywhere else within 300 feet of the hospital. As the freeway was proposed by the state, Fourth Avenue would separate the hospital from the new freeway. The main ground on which the injunction was based was the state's alleged noncompliance with RCW 47.52.072, requiring notice to abutting property owners and affording them opportunity to be heard if an existing highway, road

or street is to be established as a limited access facility. The hospital contended that it would be an abutting owner to the new freeway, making the same argument as here made by appellant. In rejecting the hospital's contention, we stated at 403:

Fourth Avenue will be left open and free to traffic by the freeway which will pass parallel to and above its north parking strip. All ingress and egress rights now vested in the hospital relating to Fourth Avenue will, so far as freeway construction is concerned, remain undisturbed. In building the freeway, the state is neither acquiring nor foreclosing the hospital's access rights to the street, nor making a limited access facility of Fourth Avenue. With the entire width of Fourth Avenue and the parking strips and sidewalks on both sides untrammeled by the freeway, Deaconess Hospital does not have the status of an abutting owner to "an existing highway, road or street" which will be "established as a limited access facility." RCW 47.52.072. Not being an abutting owner, it was entitled to no statutory notice under this section.

■ In the instant case, as in *Deaconess Hospital,* the complaining property owner is separated from the limited access facility by a public way. The fact that the separating public way in *Deaconess Hospital* was a street whereas in our case it is an alley is immaterial. We have previously held that for all practical purposes alleys are the same as roads, highways or streets. *Burkhard v. Bowen,* 32 Wn.2d 613, 203 P.2d 361 (1949). Furthermore, as in *Deaconess Hospital,* the public way on which appellant's property directly abuts "will be left open and free to traffic" and "all ingress and egress rights now vested in the . . . [appellant] relating to . . . [the alley] will, so far as freeway construction is concerned, remain undisturbed." The fact that the alley is being converted to a frontage road is also immaterial as it merely continues a means of ingress and egress under a different nomenclature.

The fact that *Deaconess Hospital* involved the application of the notice requirements of RCW 47.52.072 in an action to prevent the construction of a limited access facility,

whereas the present case involves the condemnation of property and the assessment of monetary damages under RCW 47.52.080, is an immaterial distinction. What is important is that both cases involve the definition of "abutting" property owner and that both sections of the statute are part of the same act. In both cases the question is: Is one an "abutting" property owner within the meaning of the statute if his property is separated from the limited access facility by another public way and if his access rights in the intermediate public way are not impaired by the limited access facility? It would be illogical and unreasonable to hold that such a property owner is not an "abutting" owner with respect to the notice requirements of RCW 47.52.072, but is an "abutting" owner with respect to the compensation provisions of RCW 47.52.080.

As his next assignment of error, appellant contends that the trial court erred in allowing the state to present evidence in contradiction to their plans presented at the public use and necessity hearing. Appellant contends that the construction plans introduced at the public use and necessity hearing clearly showed: (1) that appellant's property from Kingwood Street north to the vacated portion of Linden Street abutted on PSH 1; (2) that the alley was entirely within the ownership of the state; and (3) that the west lot line of appellant's property was the east boundary line of the existing highway. Citing *Municipality of Metropolitan Seattle v. Kenmore Properties, Inc.*, 67 Wn.2d 923, 410 P.2d 790 (1966), appellant argues that one of the main purposes of the hearing on public use and necessity is to provide the landowner with reasonably detailed information regarding the extent of the actual taking by the state and the construction plans so that he may properly prepare for the trial to assess his damages. Appellant further argues that the state, in its petition for an order of public use and necessity, asked to take his right of access, if any, and by introducing this exhibit indicated to appellant that he was an abutter on an existing state highway. Appellant thus concludes that to allow the state then to take the position

that there was no compensable loss of access rights as to the remaining property resulted in a fatal variance between the terms of the order of public use and necessity and the evidence presented to the jury in the trial for the assessment of damages.

The short answer to appellant's contentions regarding this assignment of error is that he does not show nor has he attempted to show that his interests were in any way prejudiced by the alleged ambiguities in the exhibit or that he relied to his disadvantage on such an interpretation of the exhibit. Appellant was as familiar with his own title as was the state. He could hardly be misled by this error in the state's first map.

As his final assignment of error, appellant contends that the trial court erred in allowing, over his objections, the state's expert appraisal witness to testify as to certain statements told to him by persons not appearing in court. These statements concerned the amount of gasoline sold by various gas stations in the Kalama area, the rent paid, and the type of business solicited and conducted. These statements were allowed on the premise that they were facts and circumstances going to make up his opinion as to the value of appellant's property. Appellant's position is that the testimony of the state's expert witness as to the gallonage being pumped at other service stations in the vicinity of appellant's service station constituted inadmissible hearsay evidence and that such evidence did not become admissible merely by classifying it as part of the expert's investigation. On the other hand, the state contends that this testimony was admitted to show the investigation and the basis for the expert's opinion as well as the details of a comparable sale. The state argues that the gallonage on sales at other service stations in the area formed an important part of the expert's comparison of property in forming his opinion. The state cites authority from other jurisdictions which allow an expert to testify as to facts obtained from hearsay sources. Such facts form the basis of his opinion and are normally gathered by experts in performing their professional activities.

Although there is a conflict of authorities, most jurisdictions, including Washington, hold that evidence of the price paid in voluntary sales of land similar to that taken at or near the time of the taking is admissible as independent evidence of the value of the land taken. 5 Nichols, Eminent Domain § 21.3 (rev. 3d ed. 1962) at 417. See *Seattle & Montana Ry. v. Gilchrist,* 4 Wash. 509, 30 Pac. 738 (1892); *Port Townsend Southern R.R. v. Barbare,* 46 Wash. 275, 89 Pac. 710 (1907); *Finch v. Grays Harbor Cy.,* 121 Wash. 486, 209 Pac. 833, 24 A.L.R. 644 (1922); *Valley Land Office, Inc. v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967). However, the use of such evidence as independent evidence of value is, of course, subject to the limitations of the hearsay and best evidence rules. As stated by Nichols, *supra,* at 431:

> The price paid for similar land, when admitted as independent evidence of value, must be proved with as much formality as any other material fact, and witnesses are not permitted to testify in regard to sales unless they were parties thereto, or were the brokers who effected the sale, or in some other manner knew the price paid of their own knowledge, and not as a matter of common rumor, or from hearsay only. (Footnote omitted.)

Apparently only two jurisdictions allow hearsay evidence of comparable sale prices to be used by an expert as substantive evidence of the value of the property being condemned. *State Highway Comm'n v. Greenfield,* 145 Mont. 164, 399 P.2d 989 (1964); *New Jersey Highway Authority v. Rue,* 41 N.J. Super. 385, 125 A.2d 305 (1956) (based on a statute).

A number of jurisdictions have held such evidence to be admissible, "not as direct evidence of the value of the property under consideration, but in support of, and as background for, the opinion testified to by an expert as to the value of the property taken." Nichols, *supra,* at 437. Annot. 95 A.L.R.2d 1217 (1964); Annot. 12 A.L.R.3d 1064 (1967).

The rationale for allowing use of such evidence by expert witnesses is stated in *State Highway Comm'n v. Parker,* 225 Ore. 143, 160, 357 P.2d 548 (1960):

The assertion is made that an expert may state the·basis of his opinion, and that that fact offers an additional opportunity for the admission of the kind of evidence which we have been considering. . . . However, if an expert states the ground upon which his opinion is based,. his explanation is not proof of the facts which he says he· took into consideration: Wigmore on Evidence, 3rd ed., § 655. His explanation merely discloses the basis of his: opinion in substantially the same manner as if he had answered a hypothetical question. It is an illustration of the kind of evidence which can serve multiple purposes· and is admitted for a single, limited purpose only.

A similar statement of the rationale is found in *United. States v. 5139.5 Acres of Land, in Aiken & Barnwell Counties, S.C., Tract No. D-308,* 200 F.2d 659, 661 (4th Cir.. 1952):

One of the witnesses for the government who had testified as an expert was asked as to sales of similar lands in the community near the time of the condemnation which he had taken into consideration in arriving at his estimate of value. He proposed to testify as to a number of sales which he had learned of in his investigation and which he had verified by examination of the land records in the county. This testimony was excluded because the records were not produced or the persons who had participated in the sales called as witnesses. This, we think, was error. While the admission of testimony of this sort was a matter very largely within the sound discretion of the trial judge, the exclusion here rested, not upon a sound exercise of that discretion, but upon an erroneous application of the hearsay and best evidence rules. The witness within reasonable bounds should have been allowed to give the jury the facts upon which his opinion as to value was based; and it would unduly hamper the production of such testimony and needlessly prolong the trial to require that the sales be proved with the particularity that would be necessary in suits to enforce the contracts relating thereto. The hearsay and best evidence rules are important, but they should not be applied to prevent an expert witness giving in a reasonable way the basis of his opinion. As said by this court in United States v. 25.406 Acres of Land, 4 Cir., 172 F.2d 990, 993, certiorari denied 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed 1738, "Testimony as to value would be worth little or nothing,.

if witnesses were not allowed to explain to the jury their qualifications as experts and the reasoning by which they have arrived at the expert opinion to which they testify; and the rule is that they may thus give the grounds of their opinions. Wigmore on Evidence 2d Ed. sec. 562; Lewis, Eminent Domain 3d ed. Sec. 654."

In *Pierce Cy. ex rel. Bellingham v. Duffy,* 104 Wash. 426, 429, 176 Pac. 670 (1918), we did hold that expert opinions were inadmissible and prejudicial where the opinions, as far as timber and improvements were concerned, were based on the opinions of other experts who were not called to testify. We there stated:

It is to be noticed that these witnesses, whose general qualifications are not questioned, do not say that they have learned from others the amount and value of the timber and the value of improvements and that they simply took the improvements and timber into consideration in a general way in fixing the value upon the whole of the property, but they say they relied upon values fixed by others upon improvements and timber, which values constituted a part of the total value fixed by each of the witnesses. Or, as one of them puts it: "The total value included the value of improvements made by other people. I accepted their figures as to the value of that property."

On the other hand, in *Bremerton School Dist. 100-C v. Hibbard,* 51 Wn.2d 226, 229, 317 P.2d 517 (1957), we allowed the use of an expert's value opinion even though some of the factors on which the opinion was based could be characterized as hearsay in nature. We there stated:

We have set forth the factors Mr. Williams considered. In the light of his training and experience, he was qualified to evaluate these factors and to express an opinion of value based thereon. The hearsay nature of some of the facts he learned by his investigation did not render inadmissible his opinion of value, for there is no intimation that Mr. Williams in reaching his conclusion relied upon valuations fixed by others.

These two decisions taken together provide the following rules: (1) an expert witness will not be allowed to testify to a valuation opinion which is not the product of

his independent judgment, but is merely another person's hearsay opinion which the witness has accepted as his own; but (2) an expert witness may, in the trial court's discretion, be allowed to testify to a valuation opinion even though some of the factors considered by the expert in reaching his opinion would be hearsay and inadmissible as independent evidence. We now hold that, when an expert is allowed to testify to a valuation opinion which is in part based on facts which would normally be hearsay and inadmissible as independent evidence, the trial court may in its discretion allow the expert to state such facts for the purpose of showing the basis of the opinion. The exclusion of such evidence, however, must be based on a sound exercise of discretion and not on an erroneous application of the hearsay and best evidence rules. See, *United States v. 5139.5 Acres of Land, supra*; *United States v. Katz*, 213 F.2d 799 (1st Cir. 1954).

In the instant case, the expert's opinion under consideration clearly comes within the holding of *Bremerton School Dist. v. Hibbard, supra*, and the trial court did not abuse its discretion in allowing the expert to testify as to gasoline sales of service stations for the purpose of showing the basis of his opinion.

Judgment is affirmed.

FINLEY, C. J., HILL and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.