[No. 222-40635-1.     Division One.     April 27, 1970.]
Panel 1

EDWARD BANCHERO, *Appellant*, v. THE CITY COUNCIL OF THE CITY OF SEATTLE, *Respondent.*

*Jerry T. Haggarty,* for appellant.

*A. L. Newbould, Corporation Counsel, G. Grant Wilcox,* and *Jorgen G. Bader, Assistants,* for respondent.

*Harry J. Scharnikow,* amicus curiae.

SWANSON, J.—This is an action for a writ of prohibition to prevent the Seattle City Council from enacting an ordinance vacating 36th Avenue South between South Andover and South Dakota Streets in the city of Seattle. The following diagram illustrates the properties of the interested parties:

On March 19, 1968, Consolidated Dairy Products Co. filed a petition asking for the vacation of that portion of 36th

Avenue South adjacent to its property. This petition was referred to the Streets & Sewers Committee of the city council who held a hearing on the proposed vacation. The committee recommended that the petition be put over for a 5-week period. After a study of the problem, the committee recommended that the council pass an ordinance of vacation if and after Consolidated did the following acts:

(a) conveyed a 30-foot strip along the easterly edge of its property for street purposes;
(b) relocated all street utilities;
(c) improved the strip with paving, drainage, and curbs and a sidewalk; and widened South Andover Street from Rainier Avenue to Courtland Place South;
(d) opened the strip for public travel as a street.

Before the council could act on the recommendation, Edward Banchero filed an application for a writ of prohibition. The writ issued with an order to show cause why the council should not be permanently restrained from acting on the vacation. The council filed a return to the show cause order and moved for dismissal or summary judgment. After considering the record in this case, the trial court granted a summary judgment of dismissal. The order recited that there was no material issue as to the following facts:

A. The property owned by plaintiff Edward Banchero does *not* abut on the street being vacated, i.e., 36 Avenue South between South Dakota Street and South Andover Street;

. . .

C. After the proposed vacation, the Banchero property will retain access for residents living southeast of South Genesee Street by way of Rainier Avenue South and by South Andover Street through Courtland Place South, 37th Avenue South through 42nd Avenue South, and the substitute roadway to be deeded to the public and opened for public travel prior to closure of 36th Avenue South;

D. There is no allegation or evidence of fraud, or collusion in the vacation proceedings.

Aside from quashing the writ and dismissing the application with prejudice, the judgment was decreed to be:

*res adjudicata* [*sic*] as to any other legal proceedings, whether for injunction or for damages arising from or related to the street vacation proposed pursuant to Comptroller's File No. 260522, and Resolution No. 21488, brought by or on behalf of Edward Banchero, and other parties having an interest in said Banchero property; . . .

Edward Banchero appeals, assigning error to the entry of the summary judgment and to the provision therein declaring it to be res judicata.

No purpose would be served by restating the law relating to summary judgments.[1] A summary judgment is improper when a material issue of fact is left unresolved. We do not believe that appellant contends such an issue remained undecided. Rather, appellant argues that a summary judgment was granted as a result of the misapplication of the law on street vacation. This argument is without merit.

█ The law of this state has long held that those whose property does not abut on the street to be vacated, or whose access is not substantially impaired by the vacation, have no standing to challenge a procedurally correct vacation. *State v. Wineberg,* 74 Wn.2d 372, 444 P.2d 787 (1968); *Capitol Hill Methodist Church v. Seattle,* 52 Wn.2d 359, 324 P.2d 1113 (1958); *Smith v. St. Paul, M. & M. Ry.,* 39 Wash. 355, 81 P. 840 (1905). This doctrine allows compensation to those only who suffer an injury unlike that suffered by the public.

There have been certain judicially created exceptions to this doctrine. One not suffering some special damage may challenge a vacation upon a proper allegation of fraud or collusion. *Ponischil v. Hoquiam Sash & Door Co.,* 41 Wash. 303, 83 P. 316 (1906); *Capitol Hill Methodist Church v. Seattle, supra.* Appellant here has made no allegation of fraud or collusion.

Other cases support the idea that a street vacation will

---

[1] See, *e.g., Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963); Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1 (1970).

be stricken when it is not in the furtherance of some public use.

The power of a city, in this state at least, to vacate such of its streets or parts of its streets as it chooses, is unquestioned. To illustrate, it may change a street from its use as a highway to a use for another public purpose, when it is determined that the change will better serve the public good; it may vacate a street when it is no longer required for public use, or when its use as a street is of such little public benefit as not to justify the cost of maintaining it; or when it is desired to substitute a new and different way more useful to the public; and, of course, it is within the power of a city to vacate a street where all of the property owners adversely affected consent to the vacation. *But in all instances, the order of vacation must have within it some element of public use,* and even where the order serves a public use, it cannot be exercised against the will of abutting property owners adversely affected, unless the damages they suffer thereby are in some way compensated.

(Italics ours.) *Young v. Nichols,* 152 Wash. 306, 308, 278 P. 159 (1929). Accord, *Yarrow First Associates v. Clyde Hill,* 66 Wn.2d 371, 403 P.2d 49 (1965).[2] It is suggested that one challenging a street vacation on the ground that it is not for a public use need not be an abutting property owner. If the vacation does not benefit the public, the public is the injured party, and any member of the public may seek redress.[3]

This is not to say, however, that a court will, without good cause, delve into the wisdom of the legislative act. The legislature or, in this case, the city council is the proper body to weigh the benefit to the public. Only where there is no possible benefit to the public will this court review the legislative determination. *Yarrow First Associates v. Clyde Hill, supra.*

---

[2]*But see Capitol Hill Methodist Church v. Seattle, supra* at 368, which appears to equate the public purpose test with fraud and collusion.

[3]In *Young v. Nichols, supra,* the challenging party was an abutting property owner. In *Yarrow First Associates v. Clyde Hill, supra,* the challenging party would have been land-locked. Thus, in both of these cases a harm was present not likewise suffered by the public.

■ The appellant argues that the vacation here will benefit only one party, Consolidated Dairy Products Co. The fact that some one private party may benefit directly or incidentally from a street vacation does not mean that the vacation will not also serve a public use or purpose. *Freeman v. Centralia,* 67 Wash. 142, 120 P. 886 (1912). The record here reveals that the city council, in acting on this matter, considered such diverse public interests as Seattle's need of dairy products, Consolidated's payroll contribution to the city's economy, and the property taxes which it pays to Seattle. The council also assessed the developing industrial and residential uses of the property in the area under consideration. After weighing all these factors, the council determined that the vacation of one block of 36th Avenue South would serve a public purpose. This is consistent with *Young v. Nichols, supra*:

> To illustrate, it may change a street from its use as a highway to a use for another public purpose, when it is determined that the change will better serve the public good; . . .

152 Wash. at 308.

The remaining ground argued by appellant in challenging the vacation is that he suffers an injury different in kind from that suffered by the general public. This argument is two-pronged: First, that access to the Banchero property is substantially impaired, and second, that rents received under a percentage lease will be reduced. We find no merit in either of these arguments on the basis of *Mottman v. Olympia,* 45 Wash. 361, 364, 88 P. 579 (1907). In *Mottman,* the owner and lessor of business property not abutting on the street to be vacated sought to enjoin the vacation. The plaintiff argued that the business utility of his property could be destroyed unless he had standing to challenge the vacation. The Supreme Court affirmed the dismissal of the action on the city's demurrer, stating:

> for the only practical effect that it has on appellants' egress and ingress is the deflection one block either east or west of the travel . . ., and that is too slight a

consideration, we think, to be controlling in a case of this kind.

■■ The principles of *Mottman* have been approved in later decisions. A slight inconvenience that is common to all travelers does not constitute a substantial impairment of access. *State v. Wineberg,* 74 Wn.2d 372, 444 P.2d 787 (1968). Parenthetically, one might even question whether or not an inconvenience exists here, since as a condition to the vacation, Consolidated must supply a new street. The second argument likewise fails, because loss of business revenue is not compensable by damages unless there is some physical injury to property. *Freeman v. Centralia, supra; Fix v. Tacoma,* 171 Wash. 196, 17 P.2d 599 (1933); *cf. Walker v. State,* 48 Wn.2d 587, 295 P.2d 328 (1956).

In short, appellant did not allege fraud or collusion or that the vacation would serve no public purpose. Nor is he an abutting property owner, or a nonabutting owner who would suffer special damages because of the vacation. The summary judgment was proper and is affirmed.

Appellant's second assignment of error complains of the provision of the order of summary judgment quoted above declaring it to be res judicata. Appellant argues that the order of summary judgment, in effect, held that prohibition was the proper remedy; otherwise the court would have dismissed the writ. Appellant therefore argues that the res judicata provision attempts to determine matters not litigated.

■■ The trial court did more than determine if prohibition was the proper remedy. The provision that the application for the writ be dismissed with prejudice indicates that the court decided this case on the merits. *Parker v. Theubet,* 1 Wn. App. 285, 461 P.2d 9 (1969). This conclusion is supported by the recitation of the evidence considered by the court.

A valid final judgment entered on the merits of a controversy is binding on the parties. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 429 P.2d 207 (1967). *See generally* Restatement of Judgments (1942). But the trial court has no

power to determine the effect of his judgment in future cases. The concept of res judicata implies prior and subsequent actions, and res judicata is an affirmative defense to be pleaded in the subsequent action. CR 8(c). If and when Banchero or some other interested party brings another suit, the court with jurisdiction can determine the res judicata or collateral estoppel effects of this judgment. We hold that part of the judgment declaring it to be res judicata superfluous and void.

The judgment as modified is affirmed.

JAMES, C. J., and FARRIS J., concur.

Petition for rehearing denied May 26, 1970.