In the Matter of The Petition of Harry J. **DUFFY and Rose M. Duffy, Edward M. Rash, Jr., Gerald E. Jordan, Laura Sowers and John L. Williams, to vacate a portion of public highway known as Mendell Place.**

Superior Court of Delaware,
New Castle County.

Submitted Dec. 9, 1981.

Decided April 7, 1982.

Timothy M. Rafferty, Wilmington, for petitioners.

Edward B. Carter, Jr., of Kimmel & Spiller, Wilmington, for opponents.

O'HARA, Judge.

Petitioners, six in number, freeholders in New Castle County, State of Delaware, seek a vacation of a portion of a public road known as Mendell Place, located in Llangollen Estates. Llangollen Estates is a residential development some seven miles south of the City of Wilmington, in New Castle County, State of Delaware, lying to the east of U.S. Route No. 13, also known as the DuPont Parkway. The portion of Mendell Place sought to be vacated is a public road extending from Schaeffer Boulevard at its easterly end approximately 130 feet westerly to the property of Saienni Enterprises.

The petition for vacation of the road in question is grounded on the contention of petitioners that the road is no longer necessary for the convenience of the public and creates a burdensome traffic pattern through Llangollen Estates. The petition is made pursuant to 17 Del.C. Ch. 13. After a hearing in the matter in which proponents of the petition, and opponents to it, were heard extensively and written arguments submitted subsequently by counsel for both proponents and opponents, the Court has determined that the petition should be denied.

█ In many jurisdictions the authority to vacate public roads is legislatively vested with courts, or other governmental bodies, with the authority for the granting of such petitions described in some detail. The legislative authority for such action by the Superior Court of the State of Delaware sets no standards for the guidance of the Court. Title 17, Del.C. § 1301 simply states as follows:

"Superior Court shall have jurisdiction to vacate public roads and bridges."

Obviously such authority cannot be exercised arbitrarily, but must be based upon the sound discretion of the Court. In such situations the usual test is to consider the necessity of the road as a public utility. *Hudson v. American Oil Company,* D.C.Vir., 152 F.Supp. 757 (1957), aff'd, 4th Cir., 253 F.2d 27; *In Re Hull,* 163 Minn. 439, 204 N.W. 534 (1925). It is sometimes stated that a highway may be vacated only when it can be determined that such road is no longer required for public use or convenience and that there is a public need for its vacation, *Stahl Soap Corporation v. City of New York,* 5 N.Y.2d 200, 182 N.Y.S.2d 808, 156 N.E.2d 443 (1959), or that the vacation of the road will inure to the public benefit or use. *Hudson v. American Oil Company,* supra; *Yarrow First Associates v. Town of Clyde Hill,* 66 Wash.2d 371, 403 P.2d 49 (1965).

█ Among the elements which may be given consideration in determining whether a road should be vacated include the usefulness of the way in question to the public, other existing roads and ways in the vicinity, the conditions of population, the location of facilities such as markets, schools and churches, in relation to the road in question, and, where appropriate, such things as the character of the soil and physical features of the area. *Boss v. Deak,* 201 Ind. 446, 169 N.E. 673 (1930). Finally, it might be said that highways should not be vacated unless they are useless, inconvenient or burdensome. 68 A.L.R. 794. Here, petitioners rely almost entirely on the contention that the continued maintenance of the road in question is so burdensome as to justify its vacation.*

█ By way of emphasizing the fact that the interest of the public transcribes local

---

* Petitioners do contend, however, and with some vehemence, that the portion of Mendell Place in

question was only opened "temporarily" some

interest, the Washington Supreme Court, in *Yarrow First Associates v. Town of Clyde Hill*, supra, said:

"In closing a public street, the 'public use' that must be considered is broader and more inclusive than the mere use by abutting property owners. Streets are dedicated to public use. They pertain to the exercise of a governmental function. [Governments] hold an interest in the streets for the benefit of the public. This implies that streets must be maintained primarily as public ways. This refers not alone to adjacent property owners, nor to the inhabitants of a particular political subdivision, but to the whole people. Every citizen of the state has an equal right to use the streets." (Citations omitted).

The main thrust of petitioners' request is that the road in question is not one of the main arteries within Llangollen Estates, itself, but has become something of a misused, side road, to the great detriment of the homeowners in the general vicinity of the intersection of Schaeffer Boulevard and Mendell Place. Much testimony was offered with respect to illegal parking in the area, vandalism, destruction of the stop sign, loud traffic noises at inconvenient hours, near accidents and excessive traffic volume with respect to both the capacity of the road and the nature of the area. Furthermore, petitioners contend there is more than adequate transportation means available to everyone through the use of the elaborate road system in and about Llangollen Estates.

While petitioners are only six in number, it is not disputed that the filing of the petition was authorized at a public meeting of the Llangollen Estates Civil Association at which 75 to 100 residents were in attendance.

In opposition to petitioners was a representative of Saienni Enterprises, two residents of the adjoining apartment complex, and the manager of that complex. The thrust of this testimony was to the effect that Mendell Place is used extensively by those residents of the apartments who wish to travel to other sections of Llangollen Estates and by other residents of Llangollen Estates travelling back and forth in the area. Furthermore, they urge, it is a road which is most convenient for emergency vehicles, such as ambulance and fire apparatus moving in and about the interior of Llangollen Estates.

Finally, the opponents of the proposal offered a petition in opposition thereto signed by some 80 residents of the area.

Additionally, the Court was informed that the school board in the area was neutral with respect to the vacation of the road in question but the supervisor in charge of transportation, who testified, did indicate that the closing of Mendell Place would require an increase in the number of times school buses would have to enter and exit Llangollen Estates to and from the very heavily travelled DuPont Parkway, at whatever additional risk this might engender to school children. The Court was also informed that the local volunteer fire department did not oppose the vacation requested and that the State Highway Department was neutral in the matter.

In evaluating the pros and cons presented by the witnesses on behalf of both sides to this issue, the Court was compelled to the conclusion that the road in question, because of misuse of it by traffic violators, and a greatly increased use of it, generally, as the larger development has expanded, has certainly made it more inconvenient and burdensome to the nearby residents than could have been contemplated in years

12 or 13 years ago, as a convenience to Saienni Enterprises, the developer of the area, and was to have been abandoned after the need was met. Saienni Enterprises, still active in the area, through its spokesmen, deny that any such agreement was made, either orally or in writing. There apparently is nothing extant to support either contention. The fact remains, however, that the road has continued in active use throughout this entire period, is surfaced in accordance with other roads in the development and even has had a stop sign in place for some years, which is intended to control traffic entering onto Schaeffer Boulevard from the portion of Mendell Place in question. It is the Court's conclusion here that whether or not any such agreement existed in the past, the concern of the Court at the moment must be addressed to the question of the interest of the public as to the road in question.

gone by. It is just as evident, however, that this road is in frequent daily use, is a convenient way for many of the residents in the area and that its closing could quite conceivably add risks to the general welfare of the residents in connection with the public services required in any such residential community. As a consequence, the Court concludes that petitioners have not established that the road in question is either useless or inconvenient to the public-at-large. While petitioners have established a certain amount of inconvenience to themselves, it certainly does not outweigh the convenience to the public-at-large nor are they prevented from continuing to seek enforcement of the motor vehicle laws, as are all residents living in our modern congested communities, or to urge a modification of the roadway and/or the traffic control devices in use.

It is the conclusion of the Court that to vacate this road, on the record here presented, would be an abuse of the Court's discretion and thus not authorized under the statute. For this reason, the Court declines to grant the petition and concludes that it must be denied.

IT IS SO ORDERED.