[No. 4-39924-3. Division Three. November 12, 1969.]

RICHARD O. PARKER, *Appellant*, v. JAMES A. THEUBET *et al.*, *Respondents.*

*Malcolm L. Edwards* and *Leon A. Uziel*, for appellant.

*Donald K. Fleck*, for respondents.

EVANS, C. J.—Appellant Richard O. Parker appeals from a judgment dismissing his action to recover on a contract for architectural services.

The respondents, James A. and Mary Theubet, are the owners and operators of the Sand & Surf restaurant, cock-

tail lounge and banquet room in Chelan, Washington. In the winter of 1963-64 they initiated plans to construct a 90-unit motor hotel which would adjoin their restaurant. They negotiated for options to purchase the necessary real property and, in the early spring of 1964, attempted to get their project under way. In order to do so they entered into a written contract with a Mr. Asahel Curtis, whereby Mr. Curtis was to obtain the necessary financing for the project. Under the terms of their contract Mr. Curtis was to assemble the information about the project which would be required by potential lenders, put the same into brochure form, together with the necessary photographs and architectural drawings and sketches, and expose the "package" to enough lenders to obtain a commitment for financing.

The appellant Richard O. Parker, a Seattle architect, after preliminary conferences with Mr. Theubet and Mr. Curtis in March of 1964, entered into an oral agreement whereby Mr. Parker undertook to do the architectural work on the project for a total fee of $10,000. Certain preliminary work was done up to a point when Mr. Parker did not want to proceed further without a written contract. At this time he had been paid $500 by Mr. Theubet in accordance with their oral agreement. The appellant Parker purchased a standard A.I.A. contract form and, in cooperation with Mr. Curtis, drafted a contract covering his architectural services and the payment of his fees, which he signed and sent to the respondent Theubet in Chelan. Mr. Theubet approved and signed the contract without change.

It is article 7 of that contract, relating to the progress payments to the architect, which gives rise to this lawsuit. That article reads as follows:

ARTICLE 7. PAYMENTS TO THE ARCHITECT

7.1 Payments on account of the Architect's Professional Fee shall be as follows:

7.1.1 A minimum primary payment of (5%) per cent of the Professional Fee, payable upon the execution of the

Agreement, is the minimum payment under this Agreement.

7.1.2 Subsequent payments of the Professional Fee shall be made monthly in proportion to services performed to increase the total payments on account of the Professional Fee to the following percentages at the completion of each phase:

| | ONLY |
|---|---|
| Schematic Design Phase, Promotion | XXX0% |
| Design Development Phase | xx (10%) |
| (x) .............. | |
| Construction Documents Phase | xx (60%) |
| Receipt of Bids | 80% |
| Construction Phase | xxx (90%) |

. . .

(x) . . . . Insert below as a condition of the "DESIGN DEVELOPMENT PHASE" and as a condition for proceeding further with this development, . . . . . "UPON APPROVAL OF THE PRELIMINARY OR TENTATIVE COMMITMENT FOR FINANCING FROM A RELIABLE FINANCIAL BODY OR INSTITUTION".

Appellant testified that he performed all of the architectural services required of him through the design development phase, the construction documents phase and the receipt of bids. The issue arises from the contention of the appellant, and the denial of the respondents, that there was "approval of the preliminary or tentative commitment for financing from a reliable financial body or institution."

Appellant testified that by May 22, 1964 he had completed the preliminary plans and outline of specifications, for which he was paid $500. Thereafter, on May 28, 1964, the written contract for his architectural services was executed. He testified, and Mr. Curtis denied, that on or about June 10, 1964 Mr. Curtis told him that a temporary commitment had been obtained, and it was for this reason that he proceeded beyond the schematic design phase. However, Mr. Parker testified that he was never advised that Mr. Theubet had approved such a commitment and that he, appellant, made no inquiry as to the adequacy of the commitment, nor did he make any attempt to verify with Mr.

Theubet or anyone else whether a commitment for financing from a reliable financial institution had been obtained. He testified he didn't consider this his "part of the project", and later, in the first part of July, 1964, when appellant was in Chelan on vacation and also working on the plans while there, he testified that he saw Mr. Theubet frequently but did not comment about nor inquire about any commitment. As to the existence of any commitment it is also noted that one of appellant's own witnesses, a Mr. Bickford, a contractor who was familiar with the progress of the project and later submitted a construction bid, testified that to his knowledge no preliminary commitment was ever obtained.

The evidence establishes that at least two financial institutions were offered an opportunity to make a preliminary commitment. Whether their responses constituted "preliminary or tentative commitments" within the meaning of conditions of article 7.1.2 is immaterial because the evidence is undisputed that Mr. Theubet, the owner, did not at any time personally give his approval to any proposal or commitment. In this regard, it was the contention of the appellant that the phrase "upon approval of the preliminary or tentative commitment for financing . . .", as contained in the conditions of 7.1.2 of article 7 meant the approval of the financial body or institution. The trial court held "upon approval . . ." meant approval of the owner, and with this we must agree. Under the evidence the only reasonable interpretation of article 7.1.2 is that first there must be an offer to make a tentative commitment from a reliable financial institution, with whatever conditions they choose to include, and then there must be an approval by the owner. Obviously, the approval would not be from the financial institution making the offer.

 Since there is substantial evidence to support the trial court's finding that the condition upon which further payment to plaintiff was predicated, namely, the obtaining and approval by defendant Theubet of a preliminary or tentative commitment for financing, had never occurred,

that finding will not be disturbed. *John R. Hansen, Inc. v. Pacific Int'l Corp.*, 76 Wn.2d 220, 455 P.2d 946 (1969).

Appellant next contends that in the event the condition precedent to proceeding further by appellant, and to payment by respondent, had not occurred, the condition precedent was waived by reason of the conduct of the respondent Theubet at a time when he knew that appellant was proceeding beyond the schematic design phase. In support of this contention appellant cites the testimony of Mr. Theubet who, when asked when he first saw the completed plans and specifications for the project, referred to a time when he was in Parker's home and Parker showed him some plans which were then almost completed. Appellant argues that despite this knowledge, respondent, Mr. Theubet, did not raise any objection to the completion of the construction documents phase. However, in examining the entire testimony of Mr. Theubet, it becomes apparent that on the occasion in question when he was shown plans by the appellant he was merely advised that the drawings he was shown were then nearing completion. There is nothing to indicate whether on this occasion respondent knew that appellant was working on partially completed preliminary plans or partially completed construction plans. Appellant contends, in any event, that respondent should have known the plans shown him were construction drawings and not preliminary drawings because they contained more information than preliminary drawings. There is nothing in the record from which the trial court could find that Mr. Theubet knew or should have known that appellant was working on construction drawings, and not preliminary drawings, until substantially after their completion, and the only use thereafter made of the plans was to obtain bids in a further attempt to obtain the financing originally contemplated by the parties.

Before the trial court could have found a waiver of the condition precedent appellant would have had to present factual evidence thereof—evidence that with full knowledge of the facts respondent had waived the condi-

tion. *Bunn v. Walch*, 54 Wn.2d 457, 342 P.2d 211 (1959). The record does not support appellant's claim of waiver.

Appellant next contends that Mr. Curtis was cloaked with the authority of an agent for the respondent Theubet in his dealings with Mr. Parker. It is not contended by appellant that the contract between respondent Theubet and Curtis established such an agency. Based upon the terms of that contract Mr. Curtis was obviously an independent contractor in the limited area of promotion. However, appellant contends that respondent's conduct or statements established such a relationship. The evidence in the record upon which appellant principally relies is the testimony of Mr. Parker when he was asked:

Q. Did you have any discussions with Mr. Theubet about what role Mr. Curtis was to play?

A. He told me that I would be working with Mr. Curtis in developing this project.

In this regard it must be noted that appellant also testified that Mr. Theubet told him that if any questions arose, appellant was to call him (Mr. Theubet). The trial court was of the opinion that the statement that Mr. Parker would be working with Mr. Curtis was not sufficient to cloak Mr. Curtis with the authority of Theubet's general agent. With this we agree. The nature of the project was such that it was essential that Mr. Curtis and the appellant work together and cooperate fully with each other, since their efforts on respondent's behalf had to be carefully coordinated from the standpoint of timing, alone. Further, Mr. Curtis was to do certain engineering work on the air conditioning for the project, which appellant later incorporated in the mechanical drawings. The necessity for a close working relationship between Parker and Curtis raises no inference that Curtis was acting as agent for the owner.

It was the view of the trial court that the appellant voluntarily proceeded at his own risk beyond the schematic design phase because he knew that his fee depended upon obtaining financing of the project. This opinion is supported by the testimony of Mr. Bickford, the plaintiff's witness,

that the appellant, as late as February or March of 1966, telephoned Mr. Bickford to inquire of him as to the progress of the financing of the project "because his fee depended upon it."

Appellant's final assignment of error is that the trial court's dismissal of appellant's case should not have been "with prejudice." This objection is raised for the first time on appeal. Appellant did not serve or file proposed findings or conclusions, or judgment, nor did he submit any written or oral objections to the findings, conclusions and judgment proposed by the defendants, which provided for a judgment "with prejudice." The Supreme Court has repeatedly held that the trial court must be informed of the contentions of the parties and their theory in support thereof so that the court may rule upon the same and thereby be given an opportunity to avoid committing error. *State v. Garrison*, 71 Wn.2d 312, 427 P.2d 1012 (1967); *Davis v. Sill*, 55 Wn.2d 477, 348 P.2d 215 (1960); *State v. Bullock*, 71 Wn.2d 886, 431 P.2d 195 (1967). In any event it is the view of this court that a dismissal "without prejudice" would have been inappropriate in that there would thereby have been no adjudication that the defendant was not indebted to the plaintiff under the facts then existing. The Supreme Court has held that a dismissal "with prejudice" appropriately follows an adjudication on the merits, while a dismissal "without prejudice" means that the existing rights of the parties are not affected by the dismissal but are as open to legal controversy as if no judgment or dismissal had been entered. *Maib v. Maryland Cas. Co.*, 17 Wn.2d 47, 135 P.2d 71 (1943); *Bates v. Drake*, 28 Wash. 447, 68 P. 961 (1902).

Judgment is affirmed.

GREEN and MUNSON, JJ., concur.