138 P.3d 124 (2006)
133 Wash.App. 665
Michael LAWRENCE, M.D., Appellant,
v.
DEPARTMENT OF HEALTH, State of Washington, Respondent.
No. 33483-6-II.
Court of Appeals of Washington, Division 2.
April 25, 2006.
Publication Ordered July 5, 2006.
*126 Susan L. Pierini, Assistant Attorney General, Olympia, WA, for Respondent.
John W. Schedler, Lee, Smart, Cook, Martin & Patterson PC, Seattle, WA, for Appellant.
HUNT, J.
¶ 1 Michael Lawrence, a physician, appeals the Medical Quality Assurance Commission's summary dismissal of unprofessional conduct charges against him. He argues that the Commission acted arbitrarily and capriciously in excess of its authority and denied him due process when it refused to conduct a hearing, dismissed the charges without prejudice, and failed to accord him a public exoneration. We disagree and affirm.

FACTS
¶ 2 The material facts are undisputed. Michael Lawrence is a board-certified neurosurgeon licensed to practice medicine in the state of Washington. The Medical Quality Assurance Commission (Commission)[1] initiated an investigation when one of Lawrence's former patients filed a complaint against him.

I. DISCIPLINARY COMMISSION CHARGES
¶ 3 The Commission issued a Statement of Charges, alleging that (1) Lawrence had engaged in unprofessional conduct in violation of RCW 18.130.180(4)[2] when he tore the dura (membrane covering the spinal canal) during surgery on 25 patients between 1998 and 2000; and (2) this number of dura tears was extremely high for a reasonably prudent neurosurgeon.
¶ 4 The Commission also issued a press release, which stated:
In October 2003, the Medical Commission charged Michael S. Lawrence, a physician and surgeon (MD00021347), with unprofessional conduct. Lawrence allegedly performed surgeries that fell below the standard of care.
Clerk's Papers at 33.
¶ 5 In issuing the Statement of Charges, the Commission considered an August 2001 letter written by Dr. L. Mercer McKinley, a physician who evaluated a patient on whom *127 Lawrence had performed two back operations and whose attorney had hired him to evaluate her. This letter stated:
[The patient] is an unfortunate 72 year-old-lady who got a bad first operation. Bad, in that the decompressive laminectomy and discectomy and screwed-in cages, from a biomechanical standpoint was not going to work. She got the `pseudoarthrosis' that would be expected ... and she had a second operation where they opened up the foramina and did a posterolateral fusion, using pedicle fixation which corrected the pseudoarthrosis problem, but she was left with neuropathic pain.
I don't think that, even though the surgery was not done well, the standard of care has been breached here ...
Administrative Record at 257.
¶ 6 After the Commission issued the Statement of Charges, it hired Craig H. Rabb, M.D., Chief of Neurosurgery at Denver Health Medical Center, to review Lawrence's cases. Dr. Rabb noted that Lawrence had performed 184 lumbar procedures. Initially, Dr. Rabb noted that there had been 22 dural tears, which he calculated to be a dural tear rate of 26 per cent; he stated that this percentage is probably a little high, but he did not feel that Lawrence was necessarily harming the public. Dr. Rabb later corrected his earlier calculation, noting that Lawrence's dural tear rate was actually 12 percent, not 26 percent. Dr. Rabb stated that 12 percent is not an exceptionally high tear rate.

II. WITHDRAWAL OF CHARGES
¶ 7 Following Dr. Rabb's correction, the Commission moved to withdraw its Statement of Charges against Lawrence because it found no cause for action. Lawrence moved the Commission to dismiss the case with prejudice and to declare his exoneration publicly.
¶ 8 Considering its withdrawal of the Statement of Charges a voluntary dismissal, the Commission dismissed the charges without prejudice and ordered a press release stating that it had withdrawn the charges against Lawrence.

III. APPEAL
¶ 9 Lawrence filed an appeal with Thurston County Superior Court, seeking review of the Commission's order withdrawing the Statement of Charges, refusal to grant dismissal with prejudice, and failure to order public exoneration. The superior court affirmed the Commission's order.
¶ 10 Lawrence appeals.

ANALYSIS

I. STANDARD OF REVIEW
¶ 11 We review the Commission's decisions under the Administrative Procedures Act (APA), chapter 34.05 RCW. RCW 18.130.100. We review issues of fact using the substantial evidence standard. RCW 34.05.570(3)(e). Substantial evidence exists where the evidence is sufficient to persuade a fair-minded person of the truth or correctness of the order. Ferry County v. Concerned Friends of Ferry County, 155 Wash.2d 824, 833, 123 P.3d 102 (2005).
¶ 12 We review issues of law de novo. Quadrant Corp. v. Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 233, 110 P.3d 1132 (2005). On mixed questions of law and fact, we determine the law independently and then apply it to the facts found by the agency. Thurston County v. Cooper Point Ass'n, 148 Wash.2d 1, 8, 57 P.3d 1156 (2002).
¶ 13 The appealing party, Lawrence, has the burden of proving invalid agency action. RCW 34.05.570(1)(a). Lawrence fails to meet this burden.

II. ARBITRARY AND CAPRICIOUS
¶ 14 Lawrence argues that the Commission acted arbitrarily and capriciously when it (1) issued a Statement of Charges without supporting evidence, (2) improperly investigated by failing to obtain a review from a surgeon before issuing the charges, and (3) dismissed the case without prejudice. His arguments fail.

A. Standard of Review
¶ 15 Under the APA, an agency acts arbitrarily and capriciously when its action is *128 willful, unreasoning, and taken without regard to facts or circumstances. But the action is not arbitrary and capricious if there is room for two opinions and the agency acted honestly and upon due consideration, even though a court might have reached the opposite conclusion. Where, as here, the Legislature has given discretion to an agency, we will not undertake to exercise that agency's discretion. Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 589, 90 P.3d 659 (2004).

B. Reasonableness of Commission's Action
¶ 16 The record does not show that the Commission acted arbitrarily and capriciously in investigating a patient complaint against Lawrence. The Commission received a complaint from a former patient of Lawrence and a letter from that patient's physician indicating that Lawrence had performed a "bad" operation on this patient. The Commission then discovered 24 other patients who had undergone similar operations by Lawrence between 1998 and 2000 and who had suffered problems similar to the complainant's. Aided by a medical consultant in its review of the case, the Commission authorized the Statement of Charges.
¶ 17 The Commission decided to investigate and to pursue disciplinary action against Lawrence based on factual patient information. This decision was not unreasonable, disregarding of facts, or lacking consideration. The standard here is not whether the Commission took the best course of action or whether the Commission's initial determination was correct, but whether it acted arbitrarily and capriciously. In light of similar torn dura complaints from 25 of Lawrence's surgical patients, Lawrence fails to show that the Commission acted arbitrarily and capriciously in its initial investigation and in filing the charges.
¶ 18 The same standard applies to the Commission's subsequent actions. After filing the charges, the Commission sought an independent review from Dr. Rabb, who initially stated that Lawrence's dura tear rate was high (although he did not also say there was harm to the public). And when Dr. Rabb later changed his opinion, the Commission withdrew the charges. Again, Lawrence has failed to show that the Commission acted arbitrarily and capriciously in dismissing the charges against him without prejudice.[3]

III. PUBLIC HEARING TO CLEAR PROFESSIONAL REPUTATION

A. No Denial of Procedural Due Process
¶ 19 Lawrence next argues that the Commission tarnished his reputation and violated his constitutional right to due process of law when it (1) issued a press release noting the Statement of Charges against him and (2) only issued a press release noting withdrawal of those charges, refusing to conduct a hearing so he could clear his name. Although professional courtesy may have entitled Lawrence to such a hearing, due process did not require one.
¶ 20 Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution,[4] the government may not deprive a person of life, liberty, or property without due process of law. Nguyen v. Dep't of Health, 144 Wash.2d 516, 522, 29 P.3d 689 (2001). A medical license is a protected property interest; a physician's professional reputation is a protected liberty interest. Nguyen, 144 Wash.2d at 527, 29 P.3d 689. Although Lawrence has thus established that a protected liberty interest, his professional reputation, is at stake, he has failed to establish that the government deprived him of this liberty interest without due process of law.
¶ 21 In Ritter v. Bd. of Comm., a case Lawrence cites in support of his argument, App. Br. at 12, our Supreme Court held,
"The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *129 The protections of the Clause adhere only if the asserted individual interests are encompassed within the Amendment's protection of "life, liberty or property." Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). If protected interests are implicated, we then must decide if the procedures employed constituted "due process of law." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
96 Wash.2d 503, 508, 637 P.2d 940 (1981). Our reading of Ritter, however, supports the opposing argument.
¶ 22 Ritter was a physician with staff privileges at a county public-hospital-district-operated hospital, which privileges entitled him to admit patients and to perform medical procedures. Ritter, 96 Wash.2d at 505, 637 P.2d 940. After determining that Ritter had violated hospital rules and regulations, the hospital Board summarily suspended his privileges. Ritter, 96 Wash.2d at 506, 637 P.2d 940. Shortly after Ritter's suspension, the hospital issued a press release that "implicitly questioned his diligence and arguably his competence as a physician." Ritter, 96 Wash.2d at 510-11, 637 P.2d 940.
¶ 23 Thereafter, the hospital Board granted Ritter's request for a hearing on his suspension. Ritter, 96 Wash.2d at 507, 637 P.2d 940. At a public Board meeting several months later, one Board member stated that "reinstating Ritter pending the administrative appeal of his summary suspension would be tantamount to rehiring an embezzler at a bank." Ritter, 96 Wash.2d at 510-11, 637 P.2d 940. Following the hearing, the Board accepted the reviewing committee's recommendation and continued suspension of Ritter's hospital privileges. Ritter appealed to the Appellate Review Body, which also conducted a hearing and found his suspension justified; the Board again continued suspension of Ritter's hospital privileges. Ritter filed a writ of review in superior court, which (1) conducted a hearing, (2) ruled that summary suspension without a pre-suspension hearing was arbitrary and capricious and unconstitutionally deprived Ritter of a protected liberty interest, and (3) ordered reinstatement of Ritter's hospital privileges. Ritter, 96 Wash.2d at 507, 637 P.2d 940. The Board appealed to the Supreme Court.
¶ 24 The Supreme Court agreed with Ritter that the hospital had deprived him of a liberty interest by derogating "his good name and reputation in the community and among his peers." Ritter, 96 Wash.2d at 510, 637 P.2d 940. The Court further noted, however, that no liberty interest would have been implicated had the hospital remained silent without attempting to justify its actions through its derogatory press release. Ritter, 96 Wash.2d at 511, 637 P.2d 940. The Court also recognized that the Board had acted improperly in failing to follow its own internal procedure when it summarily suspended Ritter without first holding a hearing.[5]Ritter, 96 Wash.2d at 505, 637 P.2d 940.
¶ 25 Nonetheless, the Court held that, although Ritter had a liberty interest in preserving his reputation, the Board's "postsuspension hearing afforded him due process of law" and an opportunity to clear his name. Ritter, 96 Wash.2d at 508-09, 511-12, 637 P.2d 940. The Court then reversed the trial court's order of reinstatement and allowed the Board's suspension to stand. Ritter, 96 Wash.2d at 516, 637 P.2d 940.
¶ 26 The events and process in Ritter, however, differ markedly from those here. Here, the Commission issued a press release reciting only the Statement of Charges against Lawrence, as required under RCW 18.130.110(2)(c). The Commission did not embellish this press release with derogatory comments about Lawrence,[6] unlike the hospital *130 Board in Ritter. Nor did the Commission include in its press release conclusory statements about the standard of care Lawrence had provided to his patients. Instead, the Commission's press release merely recited the formal charges and allegations against Lawrence, the content of which was general and neutral. Such charges and allegations contained in a press release do not amount to a deprivation of liberty under the U.S. Constitution. See, e.g., Paul v. Davis, 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (government circulation of a flyer publicizing the plaintiff's shoplifting arrest was not a deprivation of a liberty or property interest).
¶ 27 Moreover, Lawrence fails to show deprivation of life, liberty, property, or some other protected interest in addition to his reputation. Harm to reputation, standing alone, does not invoke the procedural guarantees of the Due Process Clause. Bellevue John Does 1-11 v. Bellevue Sch. Dist., 129 Wash.App. 832, 860, 120 P.3d 616 (2005) (harm to reputation, standing alone, does not implicate the procedural guarantees of the Due Process Clause); see Nguyen, 144 Wash.2d at 541-42, 29 P.3d 689 ("stigma plus" is required to establish a liberty interest).
¶ 28 We hold, therefore, that the Commission did not deprive Lawrence of his constitutional right to due process by failing to hold a hearing after issuing a press release withdrawing the Statement of Charges against him.

B. No Statutory Right to a Hearing
¶ 29 Lawrence also argues that the Commission lacked statutory authority to withdraw the Statement of Charges against him and to dismiss the case without according him a hearing because neither the APA nor the Uniform Disciplinary Act (UDA) allows voluntary dismissals. This argument also fails.
¶ 30 A person aggrieved by an agency action must first exhaust all administrative remedies within the agency before seeking judicial review. RCW 34.05.534. The following policies underlie this long-standing principle:
(1) to insure against premature interruption of the administrative process; (2) allow the agency to develop the necessary factual background on which to base a decision; (3) allow exercise of agency expertise in its area; (4) provide for a more efficient process; and (5) protect the administrative agency's autonomy by allowing it to correct its own errors and insuring that individuals were not encouraged to ignore its procedures by resorting to the courts.
See Citizens for Mt. Vernon v. City of Mt. Vernon, 133 Wash.2d 861, 866, 947 P.2d 1208 (1997) (citing McKart v. United States, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)) (emphasis added). Thus, although the APA does not contain a provision expressly addressing voluntary dismissals, such power is implicit in the agency's power to correct its own action at any point in the process before a hearing, especially where, as here, the agency is both the regulator and adjudicator.
¶ 31 If an agency chooses to reverse its own action, as the Commission did here, the parties no longer have a disputed issue. Therefore, an administrative hearing would be pointless within the APA context.[7] Moreover, in such a case, the agency has express legislative authority to decide not to conduct an adjudicative hearing. RCW 34.05.416 (Decision not to conduct an adjudication). To rule otherwise would contradict clear APA and UDA purposes behind holding settlement conferences and encouraging settlement agreements. See RCW 18.130.098; RCW 34.05.431; State v. Swarva, 86 Wash.2d 29, 33, 541 P.2d 982 (1975) (one purpose of settlement is to avoid litigation and its resulting delay and cost).
¶ 32 Here, the Commission's investigation revealed that Dr. Rabb's initial expert evaluation, on which it had relied in maintaining the charges against Lawrence, was in *131 error. In contrast to this expert's original evaluation, his new and more accurate evaluation showed no deviation by Lawrence from standard practice norms. Based on this new information, the Commission withdrew the Statement of Charges against Lawrence, thereby correcting the error of its previous preliminary determination. No statute required the Commission to conduct a public hearing as part of this charge-withdrawal process. On the contrary, the Commission had legislatively delegated discretion to decide not to hold a public hearing.

IV. DISMISSAL WITHOUT PREJUDICE
¶ 33 In a related argument, Lawrence contends that the Commission's order dismissing the charges without prejudice was not supported by substantial evidence. He argues that the Commission should have dismissed the case with prejudice because three physicians concluded that he had not engaged in unprofessional conduct. This argument also fails.
¶ 34 The Commission voluntarily dismissed Lawrence's case, without prejudice, because it was unwilling to proceed with the charges when its expert witness, Dr. Rabb, changed his opinion after he recalculated Lawrence's dura tear rate. But the Commission never adjudicated or otherwise determined whether Lawrence did or did not commit unprofessional conduct in treating the patients listed in the Statement of Charges. Because the Commission did not decide the case on its merits, Lawrence was not entitled to dismissal with prejudice. Cf. CR 41(a); Parker v. Theubet, 1 Wash.App. 285, 291 461 P.2d 9 (1969) (dismissal with prejudice appropriately follows an adjudication on the merits).
¶ 35 Instead, the Commission dismissed the charges without prejudice because the evidence it had at that time was insufficient to proceed. Accordingly, the Commission did not hold an adjudicative hearing to examine and to admit the opinions of three identified physicians, who would have testified that Lawrence did not engage in professional misconduct. At the time of this appeal, the Commission had not yet addressed the merits of the original charges and the related evidentiary issues. As a reviewing court, we cannot decide the merits of a case for the first time on appeal, as Lawrence, in essence, asks in seeking our dismissal of the charges with prejudice. See RAP 2.5; RCW 34.05.452 (rule for admission of evidence); RCW 34.05.558 (judicial review limited to agency record); RCW 34.05.566 (record consists of documents considered and used by the agency).
¶ 36 We hold, therefore, that Lawrence has failed to show that he is entitled to dismissal of the charges with prejudice.

V. PUBLIC EXONERATION
¶ 37 Next, Lawrence argues that he is entitled to public exoneration under RCW 18.130.110 because the Commission found no cause for action. Lawrence interprets the Commission's finding of no cause for action to mean that the Commission found he had committed no misconduct or negligence. As we explain above, however, the record shows that the Commission made no such finding; thus, the statutory public-exoneration requirement did not apply.
¶ 38 Under the UDA,
If the license holder or applicant is found to have not committed unprofessional conduct, the disciplinary authority shall forthwith prepare and serve findings of fact and an order of dismissal of the charges, including public exoneration of the licensee or applicant.
RCW 18.130.110 (emphasis added). Here, the Commission never reached the point of determining whether Lawrence engaged in unprofessional conduct; thus, the public exoneration requirement of RCW 18.130.110 was not triggered.
¶ 39 On the contrary, the Commission engaged only in a preliminary investigation of charges against Lawrence. It withdrew its Statement of Charges before reaching the professional-conduct-determination stage because it found no cause for action when Dr. Rabb, the Commission's expert, changed his original opinion after recalculating Lawrence's dura tear rate. That the Commission decided not to proceed with the charges against Lawrence at that time does not mean *132 the Commission conclusively found that Lawrence had not negligently treated his patients. Not only did the Commission withdraw the charges before reaching the point of determining whether Lawrence had committed unprofessional conduct, it also never entered findings of fact and conclusions of law on this issue one way or the other.
¶ 40 Because Lawrence failed to meet the statutory prerequisite  that the Commission found he had not engaged in unprofessional conduct  he was not entitled to public exoneration under RCW 18.130.110.

VI. ATTORNEY FEES
¶ 41 Because Lawrence has not prevailed on appeal, we need not address whether he is entitled to attorney fees under RCW 4.24.510, under RCW 4.84.350, or in equity, and we do not award them.
¶ 42 Affirmed.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] The Commission is part of the Washington State Department of Health that enforces medical licensing requirements. The Commission both investigates violations of the Uniform Disciplinary Act, RCW 18.130.180, and adjudicates claims.
[2] RCW 18.130.180(4) provides: "Incompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk that a patient may be harmed."
[3] See discussion in part IV of this Analysis, infra, addressing the absence of adjudication on the merits of the charges and the resultant dismissal without prejudice.
[4] U.S. CONST. amend. XIV, § 1.
[5] More specifically, the Court ruled:

[W]hile we agree that Ritter was improperly summarily suspended because the medical staff bylaws require a hearing before suspension unless such an `action must be taken immediately in the best interests of patient care' (which was absent here), we do not agree with the trial court's conclusion of law that the Hospital commissioners' final decision (reached after reviewing the ARB report) to continue Ritter's suspension was arbitrary and capricious.
Ritter, 96 Wash.2d at 515, 637 P.2d 940.
[6] For example, the Commission did not "justify" its actions by comparing Lawrence to a criminal as the hospital Board did to Ritter.
[7] Cf. Client A. v. Yoshinaka, 128 Wash.App. 833, 116 P.3d 1081 (2005) (a case is moot if a court could no longer provide effective relief, and courts should normally dismiss cases that involve only moot questions).