# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GERALD R. LONG | No. 55722-3-II |
| Appellant, | |
| v. | |
| AUTOZONE #3822; and DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, C.J.: — Gerald R. Long appeals the superior court's order granting summary judgment and affirming the Board of Industrial Insurance Appeals' (Board) order denying Long's petition for review. Long argues that the superior court erred in granting summary judgment because the Department of Labor and Industries' (Department) request for an independent medical examiner's addendum on work restrictions extended the protest deadline for a Department order. Long also argues that the superior court erred in granting summary judgment because an independent medical examiner's addendum on work restrictions constituted a timely protest of a Department order.

We hold that the superior court did not err in granting summary judgment because an independent medical examiner's opinion on work restrictions did not extend the protest deadline for a Department order and an independent medical examiner's addendum to an original report responding to the Department's request for an opinion on work restrictions did not constitute a

No. 55722-3-II

timely protest of a Department order.  Accordingly, we affirm the superior court's order granting

summary judgment and affirming the Board's order denying Long's petition for review.

FACTS

A.    INJURY, BENEFITS CLAIM, AND INDEPENDENT MEDICAL EXAMINATION

Long was injured while working for AutoZone on June 23, 2018.  Long applied for benefits

with the Department of Labor and Industries on June 26.  Long's medical documentation form

stated that his right foot slipped while he was unloading freight, and he fell to the ground.  Long

complained of injury to his back, hip and thigh area, and right knee.

At the request of the Department, Dr. William Bulley[1] performed an independent medical

examination on Long.  Dr. Bulley reviewed Long's medical history and physically examined Long.

On December 5, Dr. Bulley submitted a report to the Department that included Long's history, Dr.

Bulley's notes from the examination, and Dr. Bulley's diagnostic conclusions.  Dr. Bulley's report

included a disclaimer that

> Mr. Long is aware that he is being evaluated today at the request of [the]
> Department of Labor and Industries, and that this evaluation is not for the purpose
> of rendering treatment or establishing a doctor/patient relationship.

Clerk's Papers (CP) at 174.

Also on December 5, Dr. Bulley ordered magnetic resonance imaging (MRI) for Long's

right knee.  On December 18, based on the MRI results, Dr. Bulley submitted to the Department

an addendum to his report.  The addendum diagnosed Long's right knee condition as "patellar

---

[1]  Dr. Bulley is now deceased.

2

arthritis, pre-existing, permanently aggravated, not fixed and stable." CP at 187. The addendum also included the following statement:

> The opinions rendered in this case are mine alone. Any recommendations are given totally independently from the requesting agents. These opinions do not constitute per se a recommendation for specific claims or administrative functions to be made or enforced.

CP at 187.

On December 31, the Department issued an order accepting responsibility for "the condition diagnosed as patellar art[h]ritis of the right knee" as being related to Long's freight incident claim. CP at 191.

B. RECONSIDERATION OF RIGHT KNEE PATELLAR ARTHRITIS

AutoZone protested the Department's decision and provided information about Long previously jumping out of helicopters in the military and complaining about pre-existing conditions in his knees. The Department issued a notice stating that it was reconsidering its order accepting Long's patellar arthritis in the right knee as being related to his freight incident claim.

On March 14, 2019, the Department sent a letter to Dr. Bulley, asking him to review additional information about Long having previously served in the military. Specifically, the Department asked Dr. Bulley whether the additional information changed his opinion regarding the relationship between Long's workplace injury and the patellar arthritis diagnosis. On March 15, Dr. Bulley sent an addendum to the Department, stating that his opinion remained unchanged and reiterating that Long "appears to have had preexisting unrelated knee arthritis, aggravated by his work episode." CP at 199.

On March 19, Dr. Bulley spoke with AutoZone's legal counsel, who provided information about Long being involved in two separate incidents relating to Long's right knee: one involving unloading freight at work on June 23, 2018, and another the next day where Long slipped and fell in the restroom. On March 21, Dr. Bulley signed a letter to the Department, stating that he was "unable to state whether the need for treatment was, in fact, proximately related to the incident involving the freight." CP at 200.

The Department issued an order on April 15 (segregation order) that superseded its previous order allowing Long's claim related to his right knee. The segregation order stated that the Department was not responsible for the patellar arthritis in Long's right knee because the condition was not caused by or aggravated by the workplace injury for which Long's claim was filed. The segregation order also stated that the order would become final in 60 days unless Long filed a written request for reconsideration (protest)[2] with the Department or a written appeal with the Board.

C.    ADDENDUM ON WORK RESTRICTIONS

Also on April 15, the Department requested an addendum from Dr. Bulley. The Department's request stated, "In light of your recent correspondence with [AutoZone's legal counsel] regarding the condition of patellar arthritis, are there any work restr[ic]tions with regard to the injury of 06/23/2018? If so, please provide them." CP at 204.

On April 16, Dr. Bulley sent the requested addendum to the Department. Dr. Bulley's addendum stated:

---

[2] The Department refers to written requests for reconsideration as "protests," as do the parties in their briefing.

> Related to the preexisting, aggravated condition of patellar arthritis. [T]here are work restrictions of occasional stair climbing, no running, limited standing of 1 hour, occasional pushing/pulling 50 pounds less than 1 hour, no lifting more than 50 pounds. I do not think that the claimant can stand constantly, but that he can stand frequently with limited lifting of 35 pounds. These limitations are based on an assessment of a knee strain superimposed on preexisting unrelated patellar arthritis and obesity, aggravated by the injury.

CP at 206. The Department closed Long's claim on June 3.

D.     LONG'S PROTEST TO DEPARTMENT

On June 26, 72 days after the Department's segregation order, Long submitted a general protest to any adverse orders issued within the past 60 days. On September 9, Long's attorney sent a message to the Department, arguing that Dr. Bulley's addendum on work restrictions was a timely protest to the Department's segregation order.

The Department replied on September 16, stating that Dr. Bulley's addendum was not a protest because Dr. Bulley did not have the right to protest Department orders. Also on September 16, the Department issued an order declining to review the segregation order because Long had failed to submit a timely protest.

E.     APPEAL TO BOARD

Long appealed to the Board. Long again argued that Dr. Bulley's addendum on work restrictions constituted a timely protest to the segregation order.

The Board denied Long's petition for review and concluded that Long did not file a timely protest to the segregation order. The Board also concluded that Dr. Bulley was not an aggrieved party with standing to file a protest to the Department.

C.      APPEAL TO SUPERIOR COURT

Long appealed the Board's decision to the Pierce County Superior Court.  Long argued that the protest period was extended because the Department was still investigating and that Dr. Bulley's addendum on work restrictions constituted a timely protest.  AutoZone filed a motion to dismiss or, in the alternative, motion for summary judgment.

After hearing argument on the motion, the superior court granted AutoZone's motion for summary judgment and affirmed the Board's order denying Long's petition for review.  The superior court concluded that the Department had the right to continue to administer open claims, so the Department's request for an addendum on work restrictions did not place its segregation order in abeyance.  The superior court also concluded that

> Dr. Bulley as an independent medical examiner is by definition a neutral party and thus is not and cannot be an "other person aggrieved" within the meaning of RCW 51.52.060(1)(a).  Dr. Bulley had no personal interest or pecuniary interest in the outcome of the Plaintiff's claim and thus was without standing to file a Protest.

CP at 567.

Long appeals.

## ANALYSIS

A.      STANDARD OF REVIEW

When reviewing a decision made under the Industrial Insurance Act, the superior court relies on the certified board record and considers the issues de novo.  *White v. Qwest Corp.*, 15 Wn. App. 2d 365, 371, 478 P.3d 96 (2020), *review denied*, 197 Wn.2d 1014 (2021).  On appeal, we review the superior court's order, not the Board's order.  *Id.*  The superior court's order "is subject to the ordinary rules governing civil appeals."  *Id.*; RCW 51.52.140.

We review summary judgment orders de novo. *White*, 15 Wn. App. 2d at 371. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *White*, 15 Wn. App. 2d at 371. A material fact is one upon which the outcome of the litigation depends. *Keck v. Collins*, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015). Summary judgment is appropriate if reasonable persons could reach only one conclusion from the evidence presented. *Vargas v. Inland Washington*, LLC, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019).[3]

When engaging in statutory interpretation, we review a statute to determine and give effect to the legislature's intent by looking to the plain language of the statute. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). If the statute's meaning is plain on its face, we give effect to that plain meaning. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010).

B.    EXTENSION OF PROTEST DEADLINE:   TOLLING UNDER RCW 51.52.060(3) APPLIES TO APPEALS, NOT PROTESTS

Long argues that the Department extended the protest period for the segregation order by directing the submission of further evidence. We disagree.

Generally, a final order or decision from the Department becomes final sixty days from the date the order is communicated to the parties unless there is a written protest filed with the Department or an appeal filed with the Board. RCW 51.52.050(1).[4] However,

---

[3] Because we review summary judgment orders de novo, we do not review the superior court's findings and conclusions. *See White*, 15 Wn. App. 2d at 371.

[4] RCW 51.52.050 was amended in 2019. However, no substantive changes were made affecting this opinion. Therefore, we cite to the current statute.

> [i]f within the time limited for filing a *notice of appeal to the board* from an order, decision, or award of the department, the department directs the submission of further evidence or the investigation of any further fact, the time for *filing the notice of appeal* shall not commence to run until the person has been advised in writing of the final decision of the department in the matter.

RCW 51.52.060(3) (emphasis added).

Here, Long argues that the protest period was extended under RCW 51.52.060(3) by the Department's request for an addendum on work restrictions from Dr. Bulley. But the plain language of RCW 51.52.060(3) extends the time for "filing a notice of appeal to the board," not protesting the Department's order. Therefore, the statute is not a basis for extending the protest period and could not have extended the protest period in Long's case. Accordingly, we hold that the superior court did not err in granting summary judgement because the protest period was not extended.[5]

---

[5] We note that even if RCW 51.52.060(3) could have extended the protest period, the Department did not "direct[] the submission of further evidence or the investigation of any further fact" as contemplated by the statute.

There appears to be no case law explicitly addressing what it means for the Department to "direct[] the submission of further evidence or the investigation of any further fact" as contemplated by RCW 51.52.060(3). However, our Supreme Court has acknowledged RCW 51.52.060 as supporting "the right of the department to withdraw a closing order within the appeal period." *Brakus v. Dep't of Labor & Indus.*, 48 Wn.2d 218, 222, 292 P.2d 865 (1956). In that same decision, our Supreme Court recognized the provision about directing submission of further evidence or the investigation of any further fact as a "means of protecting [the Department] if it believed that it had erred or been mistaken as to either the cause or extent" of the worker's injury. *Id.* at 221.

Here, the Department issued a segregation order stating that the Department was not responsible for Long's right knee patellar arthritis because the condition was not caused by or aggravated by the workplace injury for which Long's claim was filed. The Department then asked for Dr. Bulley's opinion on work restrictions. The Department's request for an opinion on work restrictions cannot reasonably be interpreted as an indication that the Department believed it was mistaken as to the cause or extent of Long's injury, nor can it be interpreted as the Department

C.      WORK RESTRICTIONS ADDENDUM

Long argues that Dr. Bulley's April 16 addendum on work restrictions constituted a timely protest of the Department's April 15 segregation order because Dr. Bulley had standing to protest the segregation order as an aggrieved person or as a health services provider.[6] We disagree.

1.      Aggrieved Person—Reputational Interest

After the Department makes a decision, "the worker, beneficiary, employer, or other person aggrieved" may request that the Department reconsider the decision. RCW 51.52.050(2)(a). An aggrieved person must "have a proprietary, pecuniary, or personal right which is substantially affected by the Department's determination." *In re Chambers Bay Golf Course*, No. 09 20604, 2010 WL 5882060, at *3 (Wash. Bd. of Indus. Ins. Appeals Dec. 7, 2010). Physicians have a

---

withdrawing the segregation order. Therefore, the Department did not direct the submission of further evidence of the investigation of any further fact as contemplated by RCW 51.52.060(3). Because the Department did not direct the submission of further evidence or the investigation of any further fact, no deadline was extended under RCW 51.52.060(3).

[6] While Long attempts to characterize Dr. Bulley's addendum on work restrictions as a protest, it was not. To constitute a protest, a communication "must reasonably put the Department on notice that the worker is taking issue with some department decision." *Boyd v. City of Olympia*, 1 Wn. App. 2d 17, 30, 403 P.3d 956 (2017), *review denied*, 190 Wn.2d 1004 (2018). In making this determination, we consider the content of the communication itself and the relevant information that was in the possession of the Department at the time of the communication. *Id.* at 30-31.

Here, even if Dr. Bulley, who was an independent medical examiner, had standing to protest the Department's segregation order, Dr. Bulley's addendum on Long's work restrictions does not constitute a protest. In the addendum, Dr. Bulley provided a list of work restrictions in response to the Department's request to opine on work restrictions, not causation. And the Department had previously received communications from Dr. Bulley stating that he was "unable to state whether the need for treatment was, in fact, proximately related to the incident involving the freight." CP at 200. These communications would not reasonably put the Department on notice that Dr. Bulley was taking issue with the segregation order by submitting his work restrictions addendum.

protected liberty interest in their professional reputations. *Lawrence v. Dep't of Health*, 133 Wn. App. 665, 674, 138 P.3d 124 (2006).

Long argues that Dr. Bulley was aggrieved because he suffered reputational injury from the Department's decision. But nothing in the record shows that the Department's decision to not take responsibility for the patellar arthritis in Long's right knee affected Dr. Bulley's professional reputation. Because the record does not show that the Department's segregation order substantially affected Dr. Bulley's professional reputation or any other rights, he is not a person aggrieved within the meaning of RCW 51.52.050(2)(a). *See Chambers Bay Golf Course*, 2010 WL 5882060 at *3 (a "person aggrieved" must have a proprietary, pecuniary, or personal right which is substantially affected by the Department's decision). Therefore, Dr. Bulley's reputational interest did not provide him with standing to protest the segregation order.

2.      Health Services Provider

Long also argues that Dr. Bulley was a "health services provider" who could file a protest under RCW 51.52.060(1)(a). RCW 51.52.060(1)(a) provides that

> a worker, beneficiary, employer, health services provider, or other person aggrieved by an order, decision, or award of the department must, before he or she appeals to the courts, file with the board and the director, . . . within sixty days from the day on which a copy of the order, decision, or award was communicated to such person, a notice of appeal to the board.

The plain language in RCW 51.52.060(1)(a) clearly states that before an appeal to the courts can be made, there must first be a notice of appeal filed with the Board. The statute does not pertain to the filing of protests to the Department. Therefore, even assuming without deciding whether Dr. Bulley was a "health services provider" within the meaning of RCW 51.52.060(1)(a), the statute does not provide Dr. Bulley with the ability to protest Department's orders. Accordingly,

we hold that the superior court did not err in granting summary judgment because Dr. Bulley did not have standing to protest the segregation order.[7]

Because the protest period was not extended and Dr. Bulley's addendum on work restrictions did not constitute a protest, the superior court did not err in granting summary judgment because no timely protest was filed. Accordingly, we affirm the superior court's order granting summary judgment and affirming the Board's order denying Long's petition for review.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Ima, C.J.

We concur:

_____
Glasgow, J.

_____
Price, J.

---

[7] Long argues that, for public policy reasons, this court should hold that Dr. Bulley had standing to protest the segregation order. Indeed, all doubts with respect to the interpretation of the Industrial Insurance Act are to be resolved in favor of injured workers. *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987). But here, there are no doubts with respect to the interpretation of the Act. The plain language of the relevant statute precludes this court from holding that Dr. Bulley had standing to protest the segregation order. Therefore, we do not address Long's public policy arguments.